(573 P.2d 1128)
No. 48,951

STATE OF KANSAS, *Appellee,* v. WILLIAM D. BIRCHER, *Appellant.*

Petition for review denied April 10, 1978.

Opinion filed January 13, 1978.

*T. L. O'Hara,* of Warner, Bailey & O'Hara, of Wichita, for the appellant.

*Stuart Gribble,* Assistant District Attorney, *Vern Miller,* District Attorney, and *Curt T. Schneider,* Attorney General, for the appellee.

Before REES, P.J., ABBOTT and PARKS, JJ.

PARKS, J.: This is an appeal from a jury verdict which found William D. Bircher (defendant-appellant) guilty of aggravated burglary (K.S.A. 21-3716) and aggravated battery (K.S.A. 21-3414) arising from an attack on Henry Huebner on January 25, 1976.

Sixteen-year-old Henry Huebner was asleep in his bedroom with stereo headphones covering his ears when he was awakened by a man beating him with a cast-covered hand and forearm. Henry recognized his assailant as a former neighbor, the defendant Bircher. Henry fled but his attacker followed and stabbed him in the chest with a long screwdriver, causing serious injury. Henry escaped and summoned help.

Following his arrest later that same day, defendant made an oral statement to detective Jerry Bullins. Various pretrial motions were filed, including a motion for discovery and inspection of any written or recorded statements or confessions made by the defendant. This motion was sustained by the court.

On November 29, 1976, a twelve-member jury was empaneled and sworn. Due to the late hour, the jury was admonished and excused. The next morning when the court reconvened, one of the jurors was ill and unable to attend. After being admonished, the other eleven jurors were again excused. The next day, over the objection of the defendant, an alternate juror was selected to replace the indisposed juror and the case proceeded to trial.

Defendant has appealed and attacks the proceedings in the lower court on three principal grounds. He first argues that he was placed in jeopardy when the original twelve jurors were

empaneled and sworn, and that the trial court erred in selecting an alternate juror two days later after one of the original jurors became ill. He next contends that it was error to allow Officer Bullins to testify from notes which had not been delivered to defendant's counsel in accordance with the pretrial order for discovery. And finally, it is contended that the district court erred by allowing the state to draw a sample of defendant's blood and by allowing the results of tests on that sample to be introduced into evidence during the trial. We think that each of defendant's contentions is without merit.

The opening statements had not been made prior to the selection of the alternate juror. The only procedure accomplished before the juror's illness was the selection and swearing in of the original twelve persons. Defendant, relying on K.S.A. 21-3108, objected to the selection of the alternate juror on the ground that jeopardy attached at the time that the first jury was sworn to try the case. He further argues that the delay in empaneling the alternate juror was prejudicial to his rights.

A similar factual situation was before the court in *People v. Hess*, 107 Cal. App. 2d 407, 237 P.2d 568 (1951). There, two alternate jurors were sworn four days after the original jury of twelve as empaneled was sworn. One of the original jurors was excused because of illness, and one of the alternate jurors was substituted in her place. Defendants' motion to discharge the jury on the ground of former jeopardy was denied. In response to defendants' contention that the court erred in excusing the juror and substituting an alternate, the court said:

"We fail to perceive any invasion of appellants' substantial rights or any resultant prejudice to them in directing the selection of two alternate jurors in the manner aforesaid. They were selected prior to the introduction of any evidence and before the district attorney made his opening statement. They sat from the very inception of the proceedings that began with the introduction of the evidence; they had all the opportunities that were possessed by the regular jurors to see and hear the witnesses, and were bound by the same oath that was taken by the others to 'well and truly try the matter in issue and a true verdict render according to the law and the evidence.' The three essentials and substantive attributes or elements of a trial by jury, viz., number, impartiality and unanimity, were preserved. The inviolability of trial by jury was not therefore impinged upon or outraged. . . ." (p. 425.)

We adopt the foregoing rule as being logical, sound and dispositive of the alternate juror selection/jeopardy issue raised in this case.

We note in passing that the trial court erroneously cited K.S.A. 60-248(*h*) as controlling the selection of the alternate juror in this criminal case; the correct citation is K.S.A. 22-3412. The error is harmless. If the trial court renders a correct judgment under the facts and the law, the judgment will not be disturbed merely because wrong reasons were given for its rendition. *Boldridge v. Estate of Keimig,* 222 Kan. 280, 564 P.2d 497.

With reference to the defendant's second contention, it is sufficient to say that the court held a *Jackson v. Denno*-type hearing and determined that the longhand notes (the alleged confession) could not be construed to be a written statement of the defendant within the meaning of K.S.A. 22-3212 and that the pretrial order had been complied with. We agree. K.S.A. 22-3213 governs, not 22-3212; therefore, the notes would not be available for inspection by the defendant until after the witness had testified. *State v. Mans,* 213 Kan. 36, 515 P.2d 810.

We now consider defendant's third contention, that the court erred in allowing the state to draw and test a sample of his blood and to enter those test results into evidence. The record is clear that the state withdrew its motion for taking the defendant's blood sample and never renewed it. Rather, the court allowed the endorsement of an additional witness, Alice Copp, who testified that she had personally typed the defendant's blood on January 18, 1976—seven days *before* the attack on Henry Huebner. Relying upon hospital records, Ms. Copp testified as to the defendant's blood type. This information was recorded in the regular course of business of the hospital and was admissible under K.S.A. 60-460(*m*), the business entries exception to the hearsay rule. *In re Estate of Bernatzki,* 204 Kan. 131, 460 P.2d 527, Syl. ¶4. Moreover, the testimony of Alice Copp was relevant to the issue of whether the blood on the defendant's clothing was his own blood or that of the victim, Henry Huebner. The evidence showed the defendant's blood type to be "A" positive, whereas his clothing was stained with type "O" blood, the victim's blood type.

We find no error and the judgment is affirmed.