IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 106,661

JEREMY A. WILES,
*Appellee*,

v.

AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS (AFLAC),
*Appellant.*

SYLLABUS BY THE COURT

1.

Whether an adequate evidentiary foundation has been laid for the admission of evidence is a question of fact subject to the trial court's discretion. If there is substantial competent evidence to support the trial court's determination, it will not be disturbed on appeal. Substantial competent evidence is evidence that possesses both relevance and substance and furnishes a substantial basis of fact from which the issues can reasonably be resolved.

2.

An adequate evidentiary foundation for the admission of blood test results in civil cases requires that (1) the blood sample was taken under appropriate conditions to guard against contamination; (2) the sample was properly marked and conveyed to the laboratory; (3) the chemical testing was properly conducted by competent personnel; and (4) the test results are relevant and material to the issues presented in the litigation.

3.

K.S.A. 60-419 requires that a witness have personal knowledge of the matters over which he or she is testifying. A witness cannot testify that a blood sample was taken

1

under appropriate conditions to guard against contamination if the witness did not draw the blood or personally observe the blood draw.

4.

A hospital toxicology report may be admissible as evidence under the business records exception to the rule against hearsay, so long as it was made in the regular course of business and the circumstances surrounding the record's preparation are trustworthy. K.S.A. 2008 Supp. 60-460(m). The admissibility of a business record is a question to be determined by the trial court upon a preliminary showing of the record's authenticity and accuracy. The trial court's determination will not be disturbed unless it constitutes an abuse of discretion.

5.

A trial court abuses its discretion when: (1) no reasonable person would take the view adopted by the trial judge; (2) the ruling is based on an error of law; or (3) substantial competent evidence does not support a finding of fact on which the exercise of discretion was based.

6.

An insurance company seeking to avoid liability under an exclusionary clause for a claim that is otherwise covered under the policy has the burden of proving that the loss falls within the exclusion. A trial court's determination that an insurance company has failed to sustain its burden of proving that the loss is excluded constitutes a negative factual finding.

7.

When judgment has been rendered against an insurance company, the plaintiff may be awarded a reasonable sum for attorney fees if the court determines that the

insurer refused, without just cause or excuse, to pay the full amount of the insured's adjudged loss under the policy.

8.

The circumstances facing an insurer at the time the claim is denied determine whether an insurer has acted without just cause or excuse in refusing to pay the insured's claim.

9.

In refusing to pay an insured's claim, an insurer has a duty to make a good faith investigation of the facts surrounding the claim. However, an imperfect investigation, standing alone, will not justify an award of attorney fees under K.S.A. 40-256 if a good faith controversy as to the insurer's liability under the policy exists at the time of trial.

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 3, 2012. Appeal from Wyandotte District Court; DANIEL A. DUNCAN, judge. Opinion filed June 5, 2015. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed in part and reversed in part.

*Thomas S. Carlock*, of Carlock, Copeland & Stair, LLP, of Atlanta, Georgia, argued the cause, and *Jessica R. Beever* and *Bryan M. Groh*, of Evans & Dixon, LLC, of Kansas City, Missouri, were on the briefs for appellant.

*Donald W. Vasos*, of Vasos Law Offices, of Fairway, argued the cause, and *David A. Hoffman*, was with him on the briefs for appellee.

The opinion of the court was delivered by

JOHNSON, J.: After suffering severe injuries from an automobile accident, Jeremy Wiles filed a claim for benefits under a hospital intensive care policy issued to him by the

American Family Life Assurance Company of Columbus (AFLAC). AFLAC denied the claim under the policy's intoxication exclusion, relying in large part on a hospital toxicology report indicating that Wiles had a blood alcohol concentration of .25 within 2 hours of the accident. Consequently, Wiles filed suit against AFLAC, seeking coverage under the policy. After excluding the hospital toxicology report, the district court found that AFLAC failed to prove that Wiles' accident was in consequence of his intoxication and therefore determined that Wiles' claim for benefits was covered under the policy. The district court then granted Wiles' motion for attorney fees, finding that AFLAC's denial of coverage was without just cause or excuse. AFLAC appealed, and the Court of Appeals reversed the district court's findings and remanded the matter for a new trial.

Wiles petitioned this court for review, arguing that the Court of Appeals erred in determining AFLAC had satisfied the appropriate foundation requirements to admit the hospital's toxicology report. We agree and consequently affirm the district court's judgment, finding coverage under the policy. However, we part company with the district court regarding its determination that AFLAC's denial of coverage was without just cause or excuse and reverse that portion of the district court's judgment awarding attorney fees to Wiles under K.S.A. 40-256.

FACTS AND PROCEDURAL OVERVIEW

On March 20, 2009, Wiles had a one-car accident after leaving a friend's house where he had consumed some mixed drinks while watching the NCAA basketball tournament. Wiles claimed he was driving too fast on an S-curved road and lost control of his truck while reaching for his cell phone as it started to slide off his truck's console. Consequently, his truck left the roadway and overturned.

4

Wiles told a responding emergency medical services (EMS) worker that he had been drinking vodka earlier in the evening but could not recall how much he had consumed. Wiles was transported to the University of Kansas Hospital for emergency medical treatment, where his blood was drawn shortly after admission. The resulting toxicology report indicated that Wiles had a blood alcohol concentration of .25. As a result of the accident, Wiles suffered a spinal cord injury, rendering him a quadriplegic.

Leavenworth County Sheriff's Deputy Chad Sandberg conducted an investigation into the accident. His written report indicated that he was unable to obtain a statement from Wiles at the scene of the accident because of Wiles' injuries. However, the report documented an EMS worker's conversation with Wiles wherein Wiles admitted to drinking some alcohol earlier in the evening. Sandberg's report concluded that "[a]lcohol appears to have been a contributing factor of the accident."

A few days after the accident, Detective Dan Abramovitz interviewed Wiles, who told the detective that his cell phone began to slide off the truck's console because he was driving too fast on an S-curved road. Wiles stated that as he reached for the phone, his truck veered off the road. The detective prepared a written report documenting his interview with Wiles, but it does not appear that this report was included with Sandberg's initial motor vehicle accident report.

A week after the accident, Wiles submitted a claim to AFLAC pursuant to his policy, which provided certain hospital intensive care benefits in the event of sickness, disability, and/or an accident. The policy specifically excluded coverage for "losses caused by or resulting from . . . any loss sustained or contracted due to a covered person's being intoxicated or under the influence of alcohol, drugs or any narcotic unless administered on the advice of a physician and taken according to the physician's

5

instructions." Wiles attached Deputy Sandberg's accident report and a treating physician's statement in support of the claim.

After reading Sandberg's report indicating that alcohol was a contributing factor to the accident, AFLAC requested a copy of the hospital's toxicology report. On April 3, 2009, AFLAC sent Wiles a letter denying his claim based on the policy's limitations and exclusion language regarding losses caused by or resulting from intoxication or influence of alcohol. AFLAC's denial was based on the accident report and the hospital toxicology report. AFLAC did not interview Wiles, law enforcement personnel, medical personnel, or any other witnesses before denying the claim.

Wiles filed suit against AFLAC, seeking coverage under the policy and claiming that the denial of his claim for benefits was without just cause or excuse. Both parties filed motions for summary judgment. The district court issued an oral decision, first finding that AFLAC's policy language was less favorable to Wiles than Kansas' statutory language, which provides that an insurer shall not be liable for any loss "in consequence of the insured's being intoxicated." K.S.A. 40-2203(B)(11). The district court then denied both parties' motions, finding an issue of material controverted fact existed, namely, whether the loss was sustained as a consequence of Wiles' intoxication.

A bench trial was conducted wherein AFLAC attempted to admit the hospital's toxicology report by offering the testimony of several witnesses. Angela Buisch, an emergency room (ER) nurse working on the night Wiles was admitted, testified about the hospital's blood-drawing procedures. She stated that the hospital routinely tests the blood of trauma patients to determine blood alcohol content. With regard to the procedure used when drawing blood, Buisch testified that the draw site is prepared with Chloraprep before a needle is inserted into the draw site and the blood is extracted into a vacutainer tube. The vacutainer tube is labeled with the initials of the person who drew the blood

6

and the time the blood was drawn. The tube is then placed in a plastic bag and transported directly from the hospital's trauma area to the laboratory via a system of transportation tubes. Buisch could not recall whether she was the person who drew Wiles' blood on the night of the accident. Contrary to normal procedure, neither his blood sample nor hospital records indicated who drew Wiles' blood.

Buisch also testified regarding the difference in procedures used when drawing blood for medical purposes versus drawing blood for legal purposes. In the latter situation, hospital personnel use a Betadine solution to prepare the draw site, rather than Chloraprep, which contains alcohol that could contaminate the blood sample. The tube containing the blood specimen for legal purposes is sealed with evidence tape on which the person drawing the blood places his or her initials. That tube is placed in another container which is also sealed with evidence tape; and the sealed container is then handed directly to law enforcement officers.

Brian Selig, the nurse manager overseeing the hospital's ER operations, corroborated Buisch's testimony about the hospital's procedures for drawing and transporting blood samples. Selig testified that if the hospital's procedures were followed, Wiles' blood sample should not have been contaminated. However, Selig acknowledged that he had no personal knowledge of whether the proper procedures were followed in Wiles' case.

AFLAC moved to admit a copy of the toxicology report, and Wiles objected, citing a lack of foundation because there was no evidence indicating who drew Wiles' blood and therefore there was no evidence to establish that hospital procedures were actually followed. AFLAC subsequently tried to admit the report as a business record, and Wiles renewed his objection. The district court sustained both of Wiles' objections

but admitted the report for the limited purpose of determining whether AFLAC acted in good faith when denying the claim.

AFLAC called Deputy Sandberg as a witness. He initially testified that his conclusion that alcohol contributed to the accident was based solely on the EMS worker's statement regarding Wiles' admission of drinking earlier in the day. However, upon further prompting by AFLAC's trial counsel, Sandberg acknowledged that the clear road conditions and lack of other vehicle involvement also factored into his conclusion that alcohol contributed to the accident.

Wiles testified that on the evening of the accident, he went to a friend's house to watch the NCAA tournament. While there, he drank some vodka mixed with orange juice but could not remember how many drinks he consumed. Approximately 2 hours later, Wiles left to drive to another friend's house. Wiles testified that he accidentally drove off the road while reaching for his sliding cell phone.

After the bench trial, the district court issued a memorandum decision and order finding that because AFLAC failed to admit evidence of intoxication through the hospital toxicology report, the only evidence of intoxication was Wiles' admission that he drank some vodka hours before the accident and the circumstances surrounding the one-car accident. The district court concluded that based on the totality of the evidence, AFLAC failed to prove the accident was in consequence of Wiles' intoxication and therefore determined that Wiles was entitled to coverage under the policy.

In granting Wiles attorney fees under K.S.A. 40-256, the district court found that AFLAC "failed in its duty to conduct a good faith investigation and therefore failed to pay this claim without just cause or excuse." The district court reasoned:  "The Court

8

feels the Defendant had enough information to show an investigation was warranted. It did not have sufficient evidence to deny the claim without investigating."

AFLAC filed a timely appeal, raising four issues: First, that the district court erred in failing to admit the toxicology report based on lack of foundation or, in the alternative, that the district court should have admitted the report as a business record; second, that the district court's determination that Wiles' injuries were not sustained or contracted in consequence of his intoxication was not supported by substantial competent evidence, even without the toxicology report; third, that the district court's determination that AFLAC acted without just cause or excuse in denying the claim was not supported by substantial competent evidence; and, fourth, that the district court abused its discretion with regard to the amount of attorney fees awarded.

The Court of Appeals first determined that the district court abused its discretion in refusing to admit the toxicology report. *Wiles v. American Family Life Assurance Co.*, No. 106,661, 2012 WL 3171961, at *9 (Kan. App. 2012) (unpublished opinion). The panel reasoned that AFLAC submitted "substantial competent evidence demonstrating that Wiles' blood sample was obtained under appropriate conditions to guard against contamination, that the sample was properly marked and conveyed to the hospital lab for testing, and that the testing was properly conducted by competent personnel." 2012 WL 3171961, at *9. Accordingly, the panel reversed the district court's decision and remanded the case for a new trial. 2012 WL 3171961, at *9. Because it reversed the matter and remanded for a new trial, the panel declined to address AFLAC's argument that even without the toxicology report, the district court still erred in determining the loss was not in consequence of Wiles' intoxication. 2012 WL 3171961, at *9-10. Lastly, the panel determined that AFLAC acted with just cause or excuse in denying Wiles' claim and therefore reversed the district court's award of attorney fees. 2012 WL 3171961, at *12.

9

Wiles filed a timely petition for review, and this court granted the petition pursuant to K.S.A. 20-3018(b), obtaining jurisdiction under K.S.A. 60-2101(b).

ADMISSIBILITY OF HOSPITAL TOXICOLOGY REPORT

Wiles argues that the Court of Appeals erred by concluding that the district court abused its discretion in refusing to admit the toxicology report. We agree, first holding that AFLAC could not, as a matter of law, meet the applicable foundation requirements because it could not identify who actually drew Wiles' blood. Next, we hold that the district court did not abuse its discretion in refusing to admit the toxicology report as a business record based on its implicit finding that the method and circumstances surrounding the report's preparation did not indicate sufficient trustworthiness.

*Standard of Review*

"A trial judge has considerable discretion in evidentiary rulings concerning foundation evidence. Judicial discretion cases are not reversed unless judicial discretion is abused." *City of Overland Park v. Cunningham*, 253 Kan. 765, 772, 861 P.2d 1316 (1993).

> "'Whether an adequate evidentiary foundation was laid is a question of fact for the trial court and largely rests in its discretion. [Citation omitted.] So long as there is substantial competent evidence to support the finding, it will not be disturbed on appeal.' *State v. Lieurance*, 14 Kan. App. 2d 87, 91, 782 P.2d 1246 (1989), *rev. denied* 246 Kan. 769 (1990)." *Overland Park*, 253 Kan. at 773.

Substantial competent evidence is ""evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can

10

reasonably be resolved."'" *State v. Brown*, 300 Kan. 542, 546, 331 P.3d 781 (2014) (quoting *In re D.D.M.*, 291 Kan. 883, 893, 249 P.3d 5 [2011]).

Similarly, "[t]he admissibility of business records is a question to be determined by the trial court upon a preliminary showing as to their authenticity and accuracy." *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 531, 856 P.2d 1313 (1993). The trial court's determination will not be disturbed unless there has been an abuse of discretion. 253 Kan. at 531.

A district court abuses its discretion when:  (1) no reasonable person would take the view adopted by the trial judge; (2) the ruling is based on an error of law; or (3) substantial competent evidence does not support a finding of fact on which the exercise of discretion was made. *State v. Huddleston*, 298 Kan. 941, 960, 318 P.3d 140 (2014).

*Foundation Requirements*

"The proponent of a particular kind of evidence, whether it be a physical object or the testimony of a witness, is required to lay a foundation before it may be admitted into evidence." 3 Barbara, Kansas Law and Practice, Lawyers Guide to Kansas Evidence, § 1.9, p. 28 (5th ed. 2013). No evidentiary rule requires a foundation; rather, it is a "loose term for preliminary questions designed to establish that evidence is admissible." *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001) (citing Black's Law Dictionary 666 [7th ed. 1999]). The purpose of requiring a sufficient foundation is to prevent "'inadmissible evidence from being suggested to the [trier of fact] by any means.'" *Anderson v. Human Rights Com'n*, 314 Ill. App. 3d 35, 42, 731 N.E.2d 371 (2000) (quoting M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 901.1, p. 905 [7th ed. 1999]).

11

In *Divine v. Groshong*, 235 Kan. 127, 133, 679 P.2d 700 (1984), we listed the foundational requirements for blood tests in civil negligence cases:

"[1] If the blood sample is taken under appropriate conditions to guard against contamination, [2] if the sample is properly marked and conveyed to the laboratory, [3] if the chemical testing is properly conducted by competent personnel, and [4] if the tests results are relevant and material to the issues presented in the litigation, then those results are admissible in a civil action whether or not they are taken in conformity with the statute [governing blood alcohol tests]."

The parties do not dispute that *Divine* is controlling here. Instead, AFLAC argued that it presented sufficient evidence to satisfy the *Divine* requirements, even though it was unable to conclusively identify the hospital worker who drew Wiles' blood. The Court of Appeals agreed, relying on *State v. Davis*, 41 Kan. App. 2d 1034, 207 P.3d 281 (2009), to hold that AFLAC presented sufficient evidence that Wiles' blood sample was drawn under appropriate conditions to guard against contamination and was properly marked and sent to the hospital lab for testing despite the inability to identify the individual who actually drew Wiles' blood. *Wiles*, 2012 WL 3171961, at *6. The panel reasoned:

"Wiles' blood sample was drawn at the hospital, and the procedure was performed by a trained medical professional. Additionally, the testimony of Buisch and Selig provides the panel with sufficient evidence that the employee who drew the blood complied with the hospital's procedures to guard against contamination, followed the hospital's procedures in properly labeling the sample, and transported Wiles' blood sample to the hospital lab via the pneumatic tube transport system." 2012 WL 3171961, at * 7.

The panel's analysis is flawed for multiple reasons. First, the panel's holding conflicts with K.S.A. 60-419, which provides, in relevant part: "As a prerequisite for the testimony of a witness on a relevant or material matter, there must be evidence that he or she has personal knowledge thereof." Although Buisch testified that she was working in

12

the ER on the night Wiles was treated, she did not know if she actually drew his blood. Moreover, Buisch's testimony, that she would have followed the appropriate hospital procedures *if* she drew Wiles' blood, was not sufficient to satisfy this foundational requirement. See *State v. Jaso*, 10 Kan. App. 2d 137, 142-43, 694 P.2d 1305 (1985) ("[C]onjecture or speculation can never be the rule in giving testimony."). Similarly, Buisch's testimony that she had previously observed other hospital personnel follow proper hospital protocol in drawing blood does not satisfy the personal knowledge requirement with respect to the drawing of Wiles' blood. Simply put, Kansas law requires personal knowledge. Here, no witness could personally attest that Wiles' blood sample was taken under appropriate conditions to guard against contamination. As such, AFLAC failed to present sufficient evidence to establish that Wiles' blood sample was drawn under appropriate conditions to guard against contamination, as required by *Divine*.

Moreover, we are not persuaded by AFLAC's argument that identification of the person who drew Wiles' blood constitutes a near impossible burden. The hospital's customary procedure and practice requires personnel drawing blood to place their initials on the sample. Accordingly, this requirement would not normally be a burden for civil litigants if the hospital had simply followed its own procedure.

Second, the panel's reliance on *Davis* is misplaced. In *Davis*, the defendant was arrested for DUI and consented to a blood test, which subsequently revealed a .12 blood alcohol content. At trial, the medical technologist who completed and signed Davis' blood draw form testified, but she had no independent recollection of having worked on the date the blood was drawn and had no independent recollection of the defendant. Davis objected to the admission of the blood test based on an insufficient foundation because the technologist could not remember the draw and therefore there was no evidence the draw was performed in a "medically reasonable manner." 41 Kan. App. 2d at 1036. The district court admitted the blood test, and on appeal the Court of Appeals

13

held there were sufficient facts and circumstances "to permit an inference the blood draw was taken in a medically reasonable manner." 41 Kan. App. 2d at 1041.

But *Davis'* factual distinctions make it unpersuasive in the present case. Notably, the person who drew Davis' blood was identified and testified at trial; another witness, who actually witnessed the blood draw, also testified at trial; and there was no evidence that the proper protocols had not been followed. In contrast, here it is clear that proper protocol was not followed because the person drawing Wiles' blood failed to place his or her initials on the sample. That distinction is significant and compelling.

Lastly, the Court of Appeals' finding that Buisch and Selig's testimony provided "sufficient evidence that the employee who drew the blood . . . followed the hospital's procedures in properly labeling the sample" is directly contradicted by the evidence of record indicating that Wiles' blood sample was not marked by the initials of the person who drew his blood. *Wiles*, 2012 WL 3171961, at *7. Wiles' blood sample was not properly marked as required by hospital protocol. Accordingly, AFLAC also failed to establish the second *Divine* foundational factor, *i.e.*, that the "*sample* [*was*] *properly marked* and conveyed to the laboratory." (Emphasis added.) 235 Kan. 127, Syl. ¶ 2.

In sum, AFLAC failed to lay a proper foundation for admitting the hospital toxicology report pursuant to the requirements set forth in *Divine*. The Court of Appeals' holding to the contrary is reversed.

*Business Records Exception*

AFLAC argues that even if it failed to sustain its burden of establishing a proper foundation under *Divine*, the toxicology report should have been admitted as a business record. The district court summarily denied AFLAC's request to admit the toxicology

14

report as a business record, presumably because AFLAC could not identify who drew Wiles' blood. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012) (when party does not object to district court's failure to make adequate findings of fact and conclusions of law, appellate court can presume district court found all facts necessary to support its judgment). AFLAC does not explain why satisfying the requirements of a hearsay exception cures the failure to lay an adequate foundation for the evidence, but nevertheless, AFLAC fails to establish admissibility under the business records exception.

K.S.A. 2008 Supp. 60-460(m) provides a business record exception to the hearsay rule and states the following evidence is admissible:

> "Writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein, if the judge finds that (1) they were made in the regular course of a business at or about the time of the act, condition or event recorded and (2) the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness."

This statutory provision is similar to Fed. R. Evid. 803(6), which provides an exception to the hearsay rule for "Records of a Regularly Conducted Activity" and is commonly referred to as the "business records exception." See *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1123 (10th Cir. 2005). "The rationale behind this exception is that business records 'have a high degree of reliability because businesses have incentives to keep accurate records.'" *United States v. Ary*, 518 F.3d 775, 786 (10th Cir. 2008) (quoting *United States v. Gwathney*, 465 F.3d 1133, 1140 [10th Cir. 2006]); see also *United States v. Snyder*, 787 F.2d 1429, 1433 (10th Cir. 1986) ("The business records exception is based on a presumption of accuracy, accorded because the information is part of a regularly conducted activity, kept by those trained in the habits of precision and customarily checked for correctness.").

Hospital records are generally admissible in evidence, so long as they meet the requirements of K.S.A. 2008 Supp. 60-460(m). *In re Estate of Bernatzki*, 204 Kan. 131, 134-35, 460 P.2d 527 (1969). As noted above, K.S.A. 2008 Supp. 60-460(m) requires that in addition to being made in the regular course of business, the circumstances surrounding the record's preparation must be trustworthy. See *Schraft v. Leis*, 236 Kan. 28, Syl. ¶ 15, 686 P.2d 865 (1984). Moreover, the trial court determines whether the sources of information, method, and time of preparations reflect the trustworthiness of the evidence. *Diversified Financial Planners, Inc. v. Maderak*, 248 Kan. 946, 950, 811 P.2d 1237 (1991).

Here, there is no question that the toxicology report was a record made in the regular course of the hospital's business. Buisch testified that the hospital routinely tests the blood of trauma patients to determine blood alcohol content. See also *State v. Bircher*, 2 Kan. App. 2d 15, 17, 573 P.2d 1128, *rev. denied*, 225 Kan. 846 (1978) (holding that hospital records documenting results from blood draw and test to establish defendant's blood type was information recorded in hospital's regular course of business).

But, AFLAC failed to meet the trustworthiness requirement of K.S.A. 2008 Supp. 60-460(m) because the circumstances surrounding the preparation of the toxicology report were suspect, at best. To meet the statutory hearsay exception in this case, AFLAC had to establish that the toxicology report was prepared in accordance with the hospital's regular and trustworthy business practices. See *State v. Baze*, 359 Mont. 411, 418, 251 P.3d 122 (2011). Because of a breach of the hospital's own protocol that required the identification of the person who drew the blood, coupled with the hospital personnel's inability to independently recall the circumstances of the blood draw, AFLAC could not meet its burden. Accordingly, the district court did not abuse its discretion in finding that the business records exception to the hearsay rule was inapplicable.

16

AFLAC argues that, even without the hospital toxicology report, it sustained its burden of establishing that Wiles' claim was excluded under the policy.

*Standard of Review/Burden of Proof*

The applicability of an insurance exclusionary clause is a question of fact. See *Arnold v. Western Casualty & Surety Co.*, 209 Kan. 80, 84-85, 495 P.2d 1007 (1972); *St. Aubyn v. Thogmartin*, 206 Kan. 62, 66, 476 P.2d 248 (1970). We review a district court's findings of fact to determine if they are supported by substantial competent evidence. *Hall v. Ford Motor Credit Co.*, 292 Kan. 176, 181, 254 P.3d 526 (2011). Substantial competent evidence possesses both relevance and substance and provides a substantial basis of fact from which the issues can be reasonably determined. *Evenson Trucking Co. v. Aranda*, 280 Kan. 821, 836, 127 P.3d 292 (2006).

On the other hand, "[a]n insurance company seeking to avoid liability under an *exclusionary clause in its policy for a loss which is otherwise covered has the burden of* proving that the loss falls within the exclusion." (Emphasis added.) *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Assn.*, 215 Kan. 937, Syl. ¶ 10, 529 P.2d 171 (1974). In its supplemental brief to this court, AFLAC acknowledges that a trial court's decision that a party failed to meet its burden of proof is a negative factual finding that is reviewed on appeal to determine whether there was an "arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice." See *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 781, 189 P.3d 508 (2008).

*Analysis*

Wiles' policy with AFLAC contained the following exclusion:

"This policy does not cover losses caused by or resulting from . . . the treatment of mental or nervous disorder or disease; alcoholism or drug dependency; any loss sustained or contracted due to a covered person's being intoxicated or under the influence of alcohol, drugs or any narcotic unless administered on the advice of a physician and taken according to the physician's instruction (the term 'intoxicated' refers to that condition as defined by the law of the jurisdiction in which the injury or cause of the loss occurred)."

As previously noted, the trial court found that the policy exclusion was less favorable than what Kansas law allowed. Specifically, K.S.A. 40-2203(B)(11) mandates that an intoxicants and narcotics exclusion should read as follows: "The insurer shall not be liable for any loss sustained or contracted in consequence of the insured's being intoxicated or under the influence of any narcotic unless administered on the advice of a physician." AFLAC's policy included a conformity provision that automatically amended any conflicting policy provision to conform to the minimum requirements of the statutes of the state where the policy was issued. Accordingly, the trial court proceeded to determine whether AFLAC had carried its burden of proving that the exclusion applied because Wiles' loss was sustained or contracted in consequence of his intoxication.

Because it reversed the district court on the first issue, the Court of Appeals did not reach the question of whether the evidence was sufficient to sustain AFLAC's burden of proving the exclusion without the toxicology report or whether the district court disregarded undisputed evidence. In its supplemental brief to this court, AFLAC argues that the trial court arbitrarily disregarded undisputed evidence. Specifically, the insurer contends that "[t]he evidence introduced at trial established that Wiles was intoxicated at the time of the accident," and Wiles did not refute that fact during his testimony. Then, to

18

make the requisite causal connection between the intoxication and injury, AFLAC points to the investigating officer's testimony that "inattentiveness is an effect of intoxication."

But we are not in a position to reweigh the evidence presented to the trial judge. In its memorandum decision, the district court noted Wiles' admission that he had been drinking vodka and "the circumstances surrounding the one car accident." On the other hand, the court also mentioned Wiles' countering arguments, *i.e.*, that he was reaching for his cell phone that was sliding off of the car's console and that the result of his neurological exam at the emergency room was normal. The district court resolved the factual dispute as follows: "Based on the totality of the evidence admitted at the trial herein, the Court finds the Defendant [AFLAC] has failed in its burden to prove the accident was in consequence of the Plaintiff's [Wiles'] intoxication." The evidence was sufficient to support that holding, and nothing in the record suggests that the trial judge arbitrarily disregarded any evidence. The judgment of the district court is affirmed.

ATTORNEY FEES

*Standard of Review*

We review a district court's decision to award attorney fees under K.S.A. 40-256 for an abuse of discretion. *Tyler v. Employers Mut. Cas. Co.*, 274 Kan. 227, 242, 49 P.3d 511 (2002). Judicial action constitutes an abuse of discretion if it is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

*Analysis*

AFLAC appealed the district court's award of attorney fees under K.S.A. 40-256, arguing that it had just cause or excuse to deny Wiles' claim and that even if it had undertaken additional investigation, a good faith legal controversy over coverage still existed. The Court of Appeals agreed, finding that no reasonable person could conclude that AFLAC acted without just cause or excuse in denying Wiles' claim, and therefore held that the district court abused its discretion in awarding attorney fees pursuant to K.S.A. 40-256. *Wiles*, 2012 WL 3171961, at *12.

K.S.A. 40-256 provides, in relevant part, that

"in all actions . . . in which judgment is rendered against any insurance company . . . if it appear[s] from the evidence that such company . . . has refused *without just cause or excuse* to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action . . . ." (Emphasis added.)

"Whether an insurance company's refusal to pay is without just cause or excuse is determined on the facts and circumstances in each case." *Evans v. Provident Life & Accident Ins. Co.*, 249 Kan. 248, 261, 815 P.2d 550 (1991). Moreover, the circumstances facing the insurer *at the time* the claim is denied determine whether an insurer has acted without just cause or excuse. See *Watson v. Jones*, 227 Kan. 862, 871, 610 P.2d 619 (1980); see also *Glickman, Inc. v. Home Ins. Co.*, 887 F. Supp. 259, 261 (D. Kan. 1995) (attorney fees not justified under K.S.A. 40-256, where good faith controversy existed at time the claim was denied).

In refusing to pay a claim, an insurance company has a duty to make a good faith investigation of the facts surrounding the claim. *Evans*, 249 Kan. at 261. However, "[i]f

20

there is a bona fide and reasonable factual ground for contesting the insured's claim, there is no failure to pay without just cause or excuse." 249 Kan. at 261; see also *Friedman v. Alliance Ins. Co.*, 240 Kan. 229, 239, 729 P.2d 1160 (1986) ("just cause" exists where insurer has raised genuine issues in good faith); *Clark Equip. Co. v. Hartford Accident & Indemnity Co.*, 227 Kan. 489, 494, 608 P.2d 903 (1980) (attorney fees authorized under K.S.A. 40-256 must be denied when there is good faith legal controversy as to liability); *Koch, Administratrix v. Prudential Ins. Co.*, 205 Kan. 561, 565, 470 P.2d 756 (1970) (attorney fees not awardable where there is bona fide and reasonable factual ground for refusing to pay claim).

After receiving Wiles' claim and the attached accident report indicating that alcohol contributed to the accident, AFLAC requested the hospital's toxicology report, which indicated that Wiles was intoxicated within 2 hours after the accident. In awarding attorney fees, the district court faulted AFLAC's efforts, finding:

> "They didn't call the officers and [say] are you sure you marked the right box. They didn't call the toxicology and say what would have been the effect of an alcohol concentration when you took it at the time the accident happened. . . . They did nothing. And in my mind, nothing is not a fair investigation."

Contrary to the district court's finding, AFLAC did more than *nothing*. It followed up on the investigating officer's determination that alcohol contributed to the accident by obtaining the hospital's toxicology report. Apparently, the district court determined that AFLAC did not do *enough* to ensure that the results of its initial investigation were indisputable. But the law does not require that level of certainty, so long as the investigation has been conducted in good faith. "An imperfect investigation, standing alone, is not sufficient cause for recovery [of attorney fees] where the insurer, in fact, has objectively reasonable basis to deny coverage." 14 Couch on Insurance § 207:25 (3d ed.

2005). In other words, the legal standard focuses on whether there was a good faith controversy as to the insurer's liability under the policy. See *Clark*, 227 Kan. at 494.

Here, even had AFLAC undertaken additional investigation, a good faith controversy as to whether the accident was as a consequence of intoxication would have remained to be resolved by a factfinder. There was never any allegation or indication that Sandberg inadvertently indicated that alcohol contributed to the accident. Moreover, Wiles admitted that he had been drinking prior to the accident. The only other evidence that an additional investigation would have uncovered—Wiles' testimony that the accident was caused when he reached for the sliding cell phone and the normal neurological exam—would not have definitively resolved the good faith legal controversy of whether Wiles' accident was caused as a consequence of intoxication. Instead, it would have simply provided the factfinder with two competing theories of causation.

The district court applied the wrong legal standard when it assessed attorney fees based on the extent of the insurer's investigation, rather than on the existence of a good faith controversy as to causation. See *State v. Kenney*, 299 Kan. 389, 394, 323 P.3d 1288 (2014) (failure to follow law is abuse of discretion). Accordingly, we hold that the district court abused its discretion in assessing attorney fees against AFLAC.

CONCLUSION

We reverse the Court of Appeals' decision, reversing the district court and remanding for a new trial; affirm the district court's decision that Wiles' claim is covered

under the policy; but reverse the district court's award of attorney fees under K.S.A. 40-256.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 106,661 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.