NOT DESIGNATED FOR PUBLICATION

No. 118,002

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JANICE M. GILLETTE,
*Appellee*,

v.

AMY HAYS THOMAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; KATHLEEN M. LYNCH, judge. Opinion filed August 10, 2018. Reversed.

*Jeffrey Leiker*, of Leiker Law Office, P.A., of Kansas City, for appellant.

No appearance by appellee.

Before SCHROEDER, P.J., LEBEN, J., and BURGESS, S.J.

PER CURIAM: Amy Hays Thomas appeals the protection from stalking (PFS) order issued by the district court on June 13, 2017. Thomas claims the evidence presented at the trial was insufficient to support the issuance of a PFS order. Upon review of the record, we agree with Thomas. The evidence was insufficient. We reverse.

FACTS

Janice and Edward Gillette were married on July 4, 2009. Edward was a well-known lawyer in the community and well liked. He previously dated several women

1

including Thomas. The record reflects prior incidents where Thomas went to the Gillette home and the police were called. During the summer of 2014 or 2015, the Gillettes saw Thomas driving a black vehicle near their home on several occasions.

Edward passed away on January 6, 2016. He was buried at the same cemetery as Thomas' son. Shortly after Edward's funeral, Janice placed red and white roses on her late husband's grave. A few days later she revisited his grave but the flowers were replaced with another set of flowers and balloons saying "I love you." Janice visited Thomas' son's grave, and the same type of flowers were at his grave as those left at her husband's grave. The two graves are an unknown length away from each other, but one cannot be seen from the other.

On other occasions, Janice saw coins strategically placed on his grave. Her husband was a coin collector. Janice could not find anyone who acknowledged leaving the coins but assumed Thomas left them.

As time went on, Janice discovered more flowers left on her husband's grave and moved them to graves without flowers. Shortly after doing so, she found torn pieces of paper saying "I love you always" stabbed with a pen at her husband's grave. As a result, Janice and the maintenance staff placed cameras around her husband's gravesite but the cameras were stolen.

Sometime after Edward's death, Thomas met with Edward's father and brother at their house. She also contacted his sister by Facebook.

Around March 2016, Janice saw a smaller, white SUV-type vehicle stop near her home and back out toward the street. Janice did not see the driver. Janice had cameras at her home, but they did not see the driver either.

2

On June 29, 2016, Janice petitioned the court for a protection from stalking order. See K.S.A. 2017 Supp. 60-31a01 et seq. She alleged Thomas removed items from her husband's grave and desecrated it on multiple occasions. She further alleged Thomas drove by her house on multiple occasions and contacted her husband's family repeatedly and that these acts made her fearful for her life and safety.

The parties tried the case on January 3, 2017. When asked if the history between the three of them and the recent events caused her any alarm, Janice said, "Yes it does." She also testified she never met Thomas or communicated with her but assumed Thomas was the person leaving flowers at Edward's grave.

Thomas testified she and Edward ended their relationship in 2003. According to Thomas, she requested a protective order against Edward in 2004 because he was beating on her doors and leaving her messages. Thomas said they returned to being friends and spoke once or twice a month until he passed away in January 2016. Thomas admitted to showing up at Edward's house, claiming the incident happened 13 or 14 years ago, but she did not know Janice was there too. Thomas denied leaving any messages to Edward but admitted to speaking with his secretary shortly after he passed away. She also denied visiting his grave and leaving flowers, coins, or notes. Thomas also testified she drove into Janice's neighborhood for a garage sale. According to Thomas, the only way to enter the neighborhood is to drive by Janice's home. Janice did not know whether there were any other ways to enter or exit her neighborhood. Thomas admitted to contacting Edward's family in March 2016—she returned pictures of him to his brother and sent the Facebook message to his sister. She said she shared her condolences with them, she loved Edward but was not in love with him, and she did not discuss Janice. Finally, she testified that on June 23, 2016, she was treated for vertigo at an urgent care clinic. The court admitted her receipt into evidence. According to Thomas, her vertigo prohibited her from driving throughout the summer of 2016. Thomas' daughter also testified to her mother's vertigo diagnosis.

On June 13, 2017, the district court issued a protective order against Thomas. The court took judicial notice of the 2004 protection from abuse case Thomas filed against Edward. Without explaining any details of the case, the court noted Thomas requested an extension of the temporary order, but it was denied and attorney fees were entered against her. The court also noted it reviewed the transcripts of the proceedings indicating Thomas and Edward reached an agreement, but the court could not find the final protection order. The court made no other factual findings. Instead, the court noted eyewitness testimony is rare in stalking cases and such a case may be proven by circumstantial evidence. It granted a final protective order against Thomas "[b]ased on the testimony of the witnesses, the demeanor of the witnesses and the past history of the parties."

ANALYSIS

*The district court erred in issuing the protection from stalking order.*

Thomas claims the district court lacked sufficient evidence to conclude she committed acts of stalking. She claims the evidence at trial did not establish she knowingly and intentionally committed two or more separate acts directed at Janice and that those acts placed Janice in reasonable fear for her safety.

When a verdict or trial court decision is challenged for insufficiency of evidence or as being contrary to the evidence, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the verdict will not be disturbed on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011).

In reviewing a mixed question of fact and law, an appellate court applies a bifurcated review standard. The court's factual findings are generally reviewed under the substantial competent evidence standard. Its conclusions of law based on those facts are

4

subject to unlimited review. *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

Substantial competent evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Wiles v. American Family Life Assurance Co*., 302 Kan. 66, 73, 350 P.3d 1071 (2015).

Although a judgment may be supported by circumstantial evidence, the evidence must provide a basis for a reasonable inference by the fact-finder regarding the fact in issue. To be sufficient, circumstantial evidence does not need to exclude every other reasonable conclusion. *Siruta v. Siruta*, 301 Kan. 757, 767, 348 P.3d 549 (2015).

K.S.A. 2017 Supp. 60-31a01 et seq. is the Protection From Stalking or Sexual Assault Act. The Act is to be liberally construed to protect victims of stalking and sexual assault and to facilitate access to judicial protection for stalking and sexual assault victims. K.S.A. 2017 Supp. 60-31a01(b). To issue a final protective order under the Act, the district court must find the plaintiff has proven an allegation of stalking by a preponderance of the evidence. K.S.A. 2017 Supp. 60-31a05(a). The Act defines stalking as the "intentional harassment of another person that places the other person in reasonable fear for that person's safety." K.S.A. 2017 Supp. 60-31a02(b). Finally, the Act defines harassment as "a knowing and intentional course of conduct directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose." K.S.A. 2017 Supp. 60-31a02(c).

*The grave site incidents are insufficient evidence Thomas harassed Janice.*

Presumably, the district court's reference to circumstantial evidence addresses the items left at Edward's grave. Janice placed flowers at Edward's grave and several days later

5

those flowers were gone. Janice found flowers on Thomas' son's grave just like those left on Edward's grave. The two graves are an unknown length away from each other, but one cannot be seen from the other. At best, this is an inference someone placed similar flowers at both graves about the same time. Janice testified that on other occasions she moved flowers from her husband's grave to other graves without flowers. Similar acts could have occurred to her husband's grave as well.

Despite attempting to use cameras, the cameras were stolen and provided no evidence about the gravesite. Although family and friends did not contact her about placing items at Edward's grave, he was a well-known lawyer in the community and well liked. Moreover, a lack of contact from others does not establish Thomas left items at Edward's grave.

In order to establish harassment, Thomas' presumed course of conduct would have to be directed at Janice, the conduct would then have to seriously alarm, annoy, torment, or terrorize Janice, and the conduct cannot serve a legitimate purpose. See K.S.A. 2017 Supp. 60-31a02(c). Even presuming without deciding Thomas left the items at Edward's grave, there is no evidence or inference she did so as an act directed at Janice instead of in memory or love of Edward. Even in the light most favorable to Janice, the evidence at trial was insufficient to establish harassment because it requires too many inferences for a reasonable fact-finder to conclude Thomas was the person leaving the items at Edward's grave and directing these acts at Janice.

*Thomas' contact with Edward's family was insufficient evidence Thomas harassed Janice.*

Sometime after Edward's death, Thomas met with Edward's father and brother at their house. She also contacted Edward's sister by Facebook. The only evidence about the substance of this contact comes from Thomas. She said she shared her condolences with them, she loved Edward but was not in love with him, and she did not discuss Janice.

6

Regardless of whether the district court believed or discounted Thomas' testimony, there is no other evidence about these conversations other than they happened. No evidence or inference establishes Thomas' conversations with Edward's family were acts directed at Janice. Even in the light most favorable to Janice, the evidence here was insufficient to establish these conversations were harassment.

*Thomas' travel near Janice's house was insufficient evidence Thomas harassed Janice.*

Around March 2016, Janice saw a smaller, white SUV-type vehicle stop near her home and back out toward the street. Janice did not see the driver. Janice had cameras at her home, but they did not identify the driver either. Although Thomas admitted at some time she drove into Janice's neighborhood for a garage sale, she claimed the only way to enter the neighborhood is to drive by Janice's home. Janice did not know whether there were any other ways to enter or exit her neighborhood. Even presuming the district court discredited Thomas' testimony completely, and presuming Thomas drove by Janice's home in March 2016, there is nothing in the record to indicate Thomas stopped at Janice's home as an act of intentional harassment as required under K.S.A. 2017 Supp. 60-31a02(b). At best, the evidence from Janice establishes someone stopped near her home and backed out toward the street. Janice admits to not seeing the driver, but even if it was Thomas, Janice did not witness activity to suggest Thomas was leering, gesturing, or attempting to intimidate or bother Janice rather than merely turning around and driving away. Even in the light most favorable to Janice, the evidence here was insufficient to establish this act was intentional harassment.

The evidence presented to the district court was insufficient to issue the final PFS order against Thomas.

Reversed.

7