NOT DESIGNATED FOR PUBLICATION

No. 120,242

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of

DAVID G. DELIMONT.

MEMORANDUM OPINION

Appeal from Morris District Court; STEVEN L. HORNBAKER, judge. Opinion filed May 24, 2019. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Bryan C. Clark*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., PIERRON and BRUNS, JJ.

PER CURIAM: David G. Delimont was civilly committed to the custody of the Secretary of the Kansas Department for Aging and Disability Services (KDADS) in April 2015. Since that time, Delimont has been a resident in the Sexual Predator Treatment Program (SPTP) at Larned State Hospital. In this appeal, Delimont contends the district court abused its discretion by denying his request to appoint an examiner under K.S.A. 2018 Supp. 59-29a08(c) after his 2018 annual evaluation. We affirm the district court's ruling.

1

In 1995, Delimont pled no contest to aggravated indecent liberties with a child, indecent liberties with a child, and two counts of aggravated criminal sodomy after sexually assaulting four young boys. Three of the four victims were younger than 14 years old. The victims included Delimont's nephews and his neighbor's children, who Delimont sexually abused on multiple occasions.

While incarcerated for his 1995 convictions, Delimont refused to enter the prison's sexual offender treatment program. He also received 24 disciplinary reports, three of which were for lewd acts with male inmates of slight stature under the age of 25.

In 2014, prior to Delimont's release from prison, the State petitioned to commit him to the custody of KDADS under the Sexually Violent Predator Act (SVPA). Following a bench trial on stipulated facts, the district court determined that Delimont was a sexually violent predator and committed him to the custody of KDADS. Delimont appealed the district court's finding and this court affirmed in *In re Care & Treatment of Delimont*, No. 114,495, 2016 WL 3366001 (Kan. App. 2016) (unpublished opinion).

In March 2016, KDADS psychologists completed Delimont's first annual report and determined that he remained a sexually violent predator and it would not be safe to place him in transitional release. Nevertheless, Delimont filed a petition for release over the objection of the Secretary of KDADS (the Secretary) and asked the district court to appoint an examiner to evaluate him for transitional release. After a hearing, the district court denied Delimont's request and ordered continued commitment with KDADS. Delimont appealed, challenging the constitutionality of affording district courts discretion to appoint independent experts for indigent sexually violent predators at their annual reviews. Our court affirmed in *In re Care & Treatment of Delimont*, No. 117,706, 2017 WL 5951523 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 987 (2018).

KDADS psychologists prepared Delimont's second annual report in March 2017. The report concluded that Delimont remained a sexually violent predator and it would not be safe to place him in transitional release. Delimont petitioned for release over the Secretary's objection, but his petition was denied. In denying the petition, the district court noted that Delimont failed to participate in his treatment plan and likely would repeat acts of sexual violence if placed in transitional release. Delimont appealed, but the district court dismissed the appeal and our court denied his motion to reinstate the appeal.

In March 2018, KDADS psychologists drafted Delimont's third annual report—the report that is relevant to this appeal. The report determined that Delimont remained a sexually violent predator and that his mental abnormality/personality disorder had not improved such that it would be safe for him to be placed in transitional release. The report listed Delimont's diagnoses: (1) pedophilic disorder, sexually attracted to males, nonexclusive type; (2) child sexual abuse; (3) alcohol use disorder; and (4) borderline personality disorder with antisocial features.

The 2018 annual report noted that the SPTP is structured in two tiers—skill acquisition and skill demonstration. Delimont was still on tier one, the goal of which is to address individual issues and learn the skills needed to function safely in society. The obstacles that prevented Delimont from advancing to tier two included completing his relapse prevention plan, reducing angry outbursts, and decreasing his negative suggestive behaviors to other residents.

Dr. Sean Hornsby, Delimont's primary therapist, described his observations of Delimont in the annual report. Dr. Hornsby noted that Delimont is classified as a medium risk offender. While his participation in treatment groups was normal, his attendance was sporadic and he attended no sessions of certain treatment types. Dr. Hornsby reported that Delimont "varied between being cooperative and argumentative and slightly hostile."

Although Delimont was aware of his offending behaviors, he submitted no drafts of a relapse prevention plan.

In the past year, Delimont had engaged in many disruptive behaviors, such as stating he would protest the program, encouraging others to protest the program, physically threatening staff, and making demands. When discussing his recent rule violations, Delimont acknowledged that he has "lots of them," and he explained: "They don't write me up anymore. They know I don't care, so they leave me alone. This is my house and my residence, so they can go to hell if they don't like it."

The 2018 report also noted instances of Delimont possibly being deceitful in treatment. During psychological testing, for example, Delimont "presented an inconsistent response pattern to similar items, raising question about what is accurate or not regarding the presence or absence of any problems or psychopathology." And in an interview, Delimont reported masturbating despite explaining that his sexual behavior is nonexistent.

The report described a February 2018 interview with Delimont about his past behaviors and treatment goals. When asked what led him to sexually assault underage boys, Delimont responded, "I have no idea, that is why I am here." Delimont also stated he had "no idea" what attracted him to his victims. When asked about his plans for the upcoming year, Delimont replied, "I don't have any. I want out of here. I will fight in the courts until I get out of here." Delimont also commented on his inability to formulate setting goals. He stated, "[B]asically, I don't have any goals and plans anymore. I have learned one thing through my incarcerations and that is you don't make plans and goals. They are demeaning and self-destructive."

Finally, Delimont's 2018 report explained that his Static-99R score of +1 placed him in the "Average Risk" category. Delimont's Sex Offender Treatment Intervention and

Progress Scale score of 11 placed him in the "Moderate" risk category with considerable need for improvement in sexual interests, criminal and rule-breaking behaviors, criminal and rule-breaking attitudes, and emotional management.

In May 2018, Delimont filed his third petition for release. In addition to his petition, Delimont asked the district court to appoint counsel and permit an expert witness examination under K.S.A. 2018 Supp. 59-29a08(c). Delimont also filed an affidavit contesting allegations in the 2018 annual review.

The district court appointed an attorney for Delimont and conducted a hearing. After reviewing the 2018 annual report, the district court found that Delimont's condition had not changed since the previous year's report. The district court determined that probable cause did not exist to believe that Delimont's mental abnormality or personality disorder had significantly changed so that it would be safe to place him in transitional release. Lastly, the district court denied Delimont's request for an examiner, finding that an examiner was unnecessary and the costs involved would not be reasonable.

Delimont appeals.

ANALYSIS

On appeal, Delimont contends the district court abused its discretion by denying his request to appoint an examiner. In particular, he argues the district court failed to consider the evidence in a light most favorable to him when determining whether he could establish probable cause to support his release through an independent examination by a qualified professional.

We review for an abuse of discretion whether a district court properly denied a request for an expert to perform an examination as part of a sexually violent offender's

5

annual review. *In re Care & Treatment of Twilleger*, 46 Kan. App. 2d 302, 310, 263 P.3d 199 (2011). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.,* 302 Kan. 66, 74, 350 P.3d 1071 (2015). The party asserting the district court abused its discretion bears the burden of showing that abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

We begin with a brief summary of Kansas statutes relating to this issue. The SVPA provides that each committed individual must have an annual examination of their mental condition, which is memorialized in an annual report. The Secretary must forward the annual report to the district court that committed the individual, along with a notice signed by the individual. K.S.A. 2018 Supp. 59-29a08(a). The notice ensures the committed individual is aware of his or her right to petition the district court for release from the program even if the Secretary suggests recommitment based on the results of the annual evaluation. *Griffin v. Bruffett*, 53 Kan. App. 2d 589, 594-95, 389 P.3d 992 (2017).

After the district court receives the evaluation and notice, it must conduct an annual review hearing. 53 Kan. App. 2d at 595. At the hearing, the committed person has the burden to show probable cause to believe that person's mental abnormality or personality disorder has significantly changed so that he or she is safe to be placed in transitional release. K.S.A. 2018 Supp. 59-29a08(d). Since the committed person has the burden to establish probable cause at an annual review hearing, the district court must consider the evidence in the light most favorable to the committed person and resolve all conflicting evidence in that person's favor. *In re Care & Treatment of Burch*, 296 Kan. 215, 225, 291 P.3d 78 (2012).

An indigent committed person may also ask the district court to appoint an examiner to evaluate that person's mental condition. If an indigent person requests an

examiner, the district court must determine whether the examiner's services are necessary. K.S.A. 2018 Supp. 59-29a08(c). Important to the resolution of this particular appeal, before appointing an examiner, the district court must consider factors, including "the person's compliance with institutional requirements and the person's participation in treatment to determine whether the person's progress justifies the costs of an examination." K.S.A. 2018 Supp. 59-29a08(c). As mentioned earlier, the district court's appointment of an examiner is discretionary and we review its decision for an abuse of discretion. K.S.A. 2018 Supp. 59-29a08(c); *Twilleger*, 46 Kan. App. 2d at 310.

On appeal, Delimont claims that, in denying his request for an examiner, the district court failed to consider discrepancies in the 2018 report that he highlighted in his affidavit. We will address individually Delimont's claimed discrepancies.

*Contrary to the 2018 report, Delimont has never been sexually abused as a child.*

The 2018 annual report does not state that Delimont was sexually abused as a child. Delimont appears to misunderstand his diagnosis of "Child Sexual Abuse, Confirmed—Subsequent Encounter." Delimont was diagnosed with this condition because he sexually abused children, not because he was sexually abused as a child. Of note, the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) specifically includes a coded condition to identify a "[p]ersonal history (past history) of sexual abuse in childhood" which was not included in Delimont's diagnosis. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 718 (5th ed. 2013). Delimont has not shown a discrepancy to warrant an expert evaluation.

*Contrary to the 2018 report, Delimont does not have an alcohol disorder.*

Delimont's challenge to his diagnosis of alcohol use disorder did not warrant a court-appointed examiner. Several professionals—including his primary therapist and

7

examiner selected during his commitment proceedings—determined that Delimont suffered from alcohol dependence or alcohol use disorder given his history of binge drinking and continual alcohol use that only stopped because of his incarceration. There is no reason to believe a court-appointed examiner would reach a different conclusion. Regardless, the report minimized Delimont's alcohol use disorder by noting it is in "sustained remission," meaning that Delimont has not met the criteria for alcohol use disorder for at least 12 months. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 491 (5th ed. 2013).

*Contrary to the 2018 report, Delimont does not have a borderline personality disorder.*

Dr. Hornsby opined that Delimont suffers from borderline personality disorder with antisocial features. He reported this diagnosis is evidenced by "affect instability, a history of a suicide attempt, constant outbursts, past alcohol use, and history of violating [others'] rights." But a court-appointed examiner is not necessary to determine whether the report accurately reflected Dr. Hornsby's diagnosis of borderline personality disorder. Importantly, Delimont does not contest his diagnosis of pedophilic disorder—a condition characterized by intense sexual urges toward children. This diagnosis alone is a mental abnormality which increases the likelihood that Delimont will reoffend. See *In re Care & Treatment of Cone*, No. 116,801, 2017 WL 3668891, *7-8 (Kan. App. 2017) (unpublished opinion), *aff'd* 309 Kan. 321, 435 P.3d 45 (2019). We find no merit to Delimont's claim that an examiner was needed to review Dr. Hornsby's diagnosis of borderline personality disorder with antisocial features.

*Contrary to the 2018 report, Delimont had 100% attendance in three classes or groups.*

Delimont's disagreement with the attendance rates stated in the report is a factual dispute that could be contradicted by non-expert testimony. An examiner's expert opinion

8

could not controvert this fact issue which derives from Delimont's participation in the SPTP at Larned State Hospital.

*Delimont's test scores show that he is not a danger to society.*

Delimont does not dispute his psychological testing scores which indicate that he is at average or moderate risk to reoffend, but he asserts the scores support his argument that he should be released. However, one test determined that Delimont had a considerable need to improve his "sexual interests, criminal and rule-breaking behaviors, criminal and rule-breaking altitudes, and emotion management." And Delimont does not explain how his later testing scores—which place him in similar risk categories as his initial tests—suggest any progress justifying the costs of an examiner.

*The 2018 report does not include any recommendations for classes or programs.*

Delimont also does not explain how an examiner's recommendation of classes or programs would show that his mental abnormality has so changed that he would be safe to be placed in transitional release. The purpose of the annual report is to memorialize a current examination of the committed person's mental condition, not to provide a roadmap to achieve transitional release. See K.S.A. 2018 Supp. 59-29a08(a). Regardless, the 2018 report outlined obstacles which prevented Delimont from advancing to tier two of the program. The report also described Delimont's treatment plan for the upcoming year which included using group and individual treatment modalities.

In summary, a court-appointed examiner was not needed to resolve any purported discrepancies in the 2018 annual report that would affect the district court's probable cause determination regarding Delimont's petition for release. Moreover, assuming the district court erred, any error would be harmless given Delimont's uncontested rule violations, unwillingness to create goals, and lack of insight into his predatory behavior.

See K.S.A. 2018 Supp. 60-261 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); K.S.A. 60-2105.

The evidence in this case supports the district court's finding that an examiner's services were unnecessary. The annual report described Delimont as volatile and manipulative, having no insight into what triggers his acts of sexual violence, with no plan to avoid reoffending, and with no desire to achieve his treatment goals. Additionally, Delimont does not contest his unwillingness to set goals or his inability to recognize what leads him to sexually assault underage boys.

Both factors specifically identified in K.S.A. 2018 Supp. 59-29a08(c)—compliance with institutional requirements and participation in treatment—support the district court's decision. In the year leading up to his 2018 annual review, Delimont repeatedly violated institutional requirements. Delimont shouted and cussed at other residents, he failed to control angry outbursts, he encouraged others to protest the program, and he physically threatened staff. Delimont believed staff no longer issued rule citations against him because they knew he did not care. The annual report also states that Delimont failed to fully participate in treatment by failing to draft a relapse prevention plan. Delimont does not contest the report's description of his behavior or his failure to submit a relapse prevention plan.

We hold that reasonable persons could agree with the district court's conclusion that Delimont's treatment progress did not justify the costs of an examination. And a court-appointed examiner was not needed to resolve any claimed discrepancies in the 2018 annual report. Accordingly, we find no error.

Finally, Delimont asks our court to admonish the State for failing to promptly submit journal entries memorializing prior annual review hearings. Under K.S.A. 2018

10

Supp. 59-2401a(b)(3), appeals from SVPA proceedings are among those which have priority over all others. The prompt filing of journal entries obviously facilitates this expedited process. We encourage all parties to work together to submit journal entries memorializing annual review hearings to the district court in a timely manner.

Affirmed.