CORRECTED OPINION
NOT DESIGNATED FOR PUBLICATION

No. 115,003

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARTINE STEPHAN,
*Appellant*,

v.

KIMBERLY MARTIN,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; LARRY D. HENDRICKS, judge. Opinion filed June 16, 2017. Affirmed.

*Craig Stephan*, of Law Office of Craig Stephan, of Scottsdale, Arizona, and *Kammie Dillner*, of counsel, Clutter & Aadalen, LLP, of Topeka, for appellant.

*B.J. Hickert*, of Newbery, Ungerer, & Hickert, LLP, of Topeka, and *Kate M. Wary*, of Law Office of Bauer & Pike, LLC, of Great Bend, for appellee.

Before BUSER, P.J., ATCHESON and POWELL, JJ.

BUSER, J.: This is an appeal of an accounting action initiated under K.S.A. 58-662(a) of the Kansas Power of Attorney Act (KPAA). Martine Stephan contends the district court erred in several ways during this litigation which ultimately concluded with the district court ruling that Stephan had received a full and complete accounting of the actions taken by her sister, Kimberly Martin, in her capacity as attorney in fact for their now deceased mother, Norma Brooks.

1

In particular, Stephan challenges the district court's determination that Martin did not breach any of her fiduciary duties and the court's refusal to (1) permit Stephan to depose Martin, (2) vacate the protective order issued to protect the confidentiality of Norma's records, and (3) award Stephan attorney fees under K.S.A. 2016 Supp. 58-657(g). After carefully reviewing the record and considering the parties' arguments, we find no error. Accordingly, we affirm the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

George and Norma Brooks were married and had five children: Kimberly A. Martin, Martine C. Stephan, Rodney F. Brooks, Dudley D. Brooks, and Karen L. Fletcher. In her later years, Norma executed a general durable power of attorney, appointing three of her children, Martin, Rodney, and Dudley to serve "individually or jointly" as her agents. In a supplemental general durable power of attorney, Norma appointed Capital City Bank as an additional agent.

George died a short time later, on August 11, 2012, and 2 months later, on October 12, 2012, Norma passed away. Norma's will was filed in the Shawnee County District Court within 6 months of her death on January 18, 2013. See K.S.A. 2016 Supp. 59-618a. In the will, Norma designated Capital City Bank as the executor of her estate and the George and Norma Brooks Joint Revocable Trust (Trust) as her sole beneficiary. Capital City Bank also served as trustee of the Trust.

On April 8, 2013, Norma's daughter, Stephan, filed a petition, pursuant to K.S.A. 58-662(a), for an order directing her sister, Martin, to "prepare an accounting of all transactions under the Durable Power of Attorney, from the time the Durable Power of Attorney was executed to the date of Norma Brooks's death, and including any post death transactions." The next day, the district court entered an order directing Martin to produce a formal accounting of her actions as Norma's attorney in fact.

2

In response, Martin submitted signed copies of various banking transactions associated with a checking account held by Norma and George at Silver Lake Bank. Shortly thereafter, Stephan filed notices to issue business records subpoenas to the records custodians at Aldersgate Village, Capitol Federal, Bankers Life and Casualty Company (Bankers Life), Waddell & Reed, and Silver Lake Bank.

Martin objected to the subpoenas, asserting that because they related to Norma's medical and other personal financial information, the requests went beyond the scope of K.S.A. 58-662 and were irrelevant to the proceeding. In response, Stephan stated that she was not requesting medical records, and she claimed entitlement to request relevant records with or without Martin's signature in order to provide a complete accounting.

On June 25, 2013, the district court held a hearing regarding the subpoenas and a late-filed motion to compel accounting. In the motion, Stephan alleged that Martin had failed to provide a complete accounting because she only had provided the district court with copies of checks from one bank account. Stephan sought a listing of assets, a variety of financial documents, and information related to all accounts in Norma's name.

At the hearing, Martin contended she had provided a complete accounting but she did not object to Stephan's issuance of business records subpoenas which sought production of documents she signed as Norma's agent. Martin also argued that Norma valued her privacy and did not want her private information shared with others, including Stephan and her husband, an attorney licensed to practice law in Arizona. As a result, Martin insisted that if Stephan wished to obtain confidential records beyond an accounting of her actions as agent, the Capital City Bank, as the executor of Norma's estate tasked with protecting her privacy interests, should be joined as a necessary party to the proceedings.

3

Stephan, on the other hand, contended that Martin's accounting was insufficient. As evidence of this assertion, Stephan indicated that Martin had not yet accounted for "about $7,000 of refunds" received from a long term care policy Norma had with Bankers Life. Stephan further contended that it was unnecessary to join the Capital City Bank because K.S.A. 58-662(a) authorized her, as an adult member of Norma's family, to obtain a full and complete accounting of Martin's actions.

The district court granted Stephan's request to issue business records subpoenas to Silver Lake Bank, Waddell & Reed, Capitol Federal, Bankers Life, and Aldersgate Village for documentation, other than medical records, relating to Norma. The district court also determined it was appropriate to issue a protective order, which prevented anyone other than the parties' attorneys from reviewing the documentation produced from the subpoenas "to protect the privacy rights of the decedent." As the district court explained, "[Norma] was a private person and maybe [she did not] want her kids to know or anyone else to know" all the intimate details of her life. However, the district court indicated that if one of the attorneys discovered misconduct based on a review of the financial records, the court would conduct an in camera review prior to releasing those documents from the protective order.

The district court also ordered Martin to prepare an accounting of her actions as Norma's agent by producing within 21 days all of Norma's financial records in her possession during the time period she served as an agent. The district court applied the protective order to these documents. As directed, Martin provided the supplemental accounting.

A few weeks later, Stephan filed a motion to vacate the protective order. Stephan alleged that Martin failed to comply with K.S.A. 2016 Supp. 60-226(c), because she did not show good cause that Norma desired to preclude any of her adult children, or anyone else, from accessing her financial records. Stephan also argued there was a strong

4

presumption favoring open access to courts and court records, Norma's right to privacy terminated upon her death, and K.S.A. 58-662(e)(7) provided no legal basis for the order because it dealt with disabled principals, not with deceased principals.

Martin opposed Stephan's motion, contending it was moot because all of the accounting authorized by K.S.A. 58-662 had been provided, business records subpoenas had been issued, and no evidence of wrongdoing was apparently uncovered as evidenced by Stephan's failure to request an in camera review. Moreover, Martin asserted that Norma's right to privacy extended beyond her death and Stephan waived any objection to the protective order by accepting the benefits of the order—the issuance of the business records subpoenas and receipt of discovery documents.

Finally, Martin filed a motion for entry of final judgment or, alternatively, to join the Capital City Bank as an additional defendant under K.S.A. 2016 Supp. 60-219. Martin urged the district court to enter a final judgment because the "entire relief requested by [Stephan] in her [p]etition ha[d] been provided." Alternatively, Martin argued that it was necessary to join the Capital City Bank as an additional defendant because it was the designated executor of Norma's estate and the trustee of the Trust.

In response, Stephan contested Martin's motion for a final judgment indicating that she had not received sufficient documentation to determine if Martin may have retained some of Norma's assets. Stephan also opposed joining Capital City Bank as a necessary party.

On November 13, 2013, the district court held a hearing on the parties' motions. At the hearing, Stephan was represented by her husband, Craig Stephan, who was admitted as an attorney of record pro hac vice. In addition to asserting his view about the purported misdeeds of Martin, Dudley, and Rodney in the handling of the healthcare and financial matters of George and Norma, Stephan's counsel indicated that a complete accounting

5

had not yet been provided. In particular, Stephan argued the following discovery was needed: (1) depose Martin and "ask her what happened"; (2) investigate whether Waddell & Reed responded appropriately to its subpoena; (3) depose a representative at Bankers Life and order the institution to comply with its subpoena; and (4) subpoena the business records at the McCrite Plaza Retirement Community.

The district court expressed concern that the requested discovery exceeded the limits of K.S.A. 58-662, because the statute did not authorize Stephan to "go fishing wherever [she] would like to [go]." Similarly, Martin argued that Stephan's discovery requests were geared towards gathering evidence for a future lawsuit rather than obtaining an accounting. Moreover, after the district judge opined that an accounting action was not the proper forum for pursuing complaints against Martin, the district judge stated:

> "I understand there's a remedy for accounting, which we've done, but I'm saying to you that at the end of this, I agree with you. Whichever way this goes, all I can do is dismiss the case and if you think there is fraud or misappropriation, that goes somewhere else, not in this case, because there's no remedy that I have at the end of this accounting to do anything other than to say the accounting wasn't appropriate, wasn't complete.
>
> . . . .
>
> ". . . I think there's a point in which I can say, that's it, folks. I've given you what you've asked for and if you want something, go somewhere else. If you want to go somewhere else for a fishing tour or find something else about it, you can file a suit with the trustee. . . . I don't know if [Martin has] done anything wrong, no one has presented to me anything to show me that there's any evidence you've gotten so far in anything you've gotten.
>
> "She's given you an accounting to say where it all was. She's done what the statute tells her to do, give you an accounting . . . ."

However, the district court granted Stephan's motion to compel Bankers Life to comply with the business records subpoena and conduct a deposition. The district court

also granted Stephan's motion to issue a business records subpoena to the McCrite Plaza Retirement Community for any financial information regarding care Norma received at the facility. But the district court refused to "grant any depositions or any further discovery until someone [could] show [the court] that [there was] a problem," *i.e.*, some wrongdoing in the accounting or supplemental accounting. The district court also took Martin's motion for a final judgment under advisement pending receipt of the discovery.

Finally, regarding the motion to vacate the protective order, the district court indicated its willingness to amend the protective order to allow experts to review the discovery documentation provided those experts understood they were also under a protective order. The motion to vacate the protective order, however, was taken under advisement.

One month later, Stephan sought an order authorizing the taking of Martin's deposition to inquire into all of the documents and transactions relating to Norma and "any misuse or abuse of [Martin's] powers." In response, Martin argued that Stephan should be prohibited from conducting further discovery unless there was some showing of misconduct. Martin further contended that Stephan was simply pursuing this case as a discovery device to obtain information to determine whether certain actions could have been taken by Norma or others to obtain additional funds for Norma or her estate.

Stephan countered:

"Based upon records available to [Stephan], which have been discussed with the Court, it now appears that one of the following occurred:  (1) [Martin] received a payment for benefits under Norma Brooks' [long term care] policy for in-patient stays during the time period from December 23, 2011 to April 27, 2012, but failed to deposit the funds into Norma Brooks' account; (2) [Martin] knowingly failed to make a claim for said benefits, but a claim can now be made for payment by Bankers Life; or (3) [Martin] is liable for payment of the benefits, due to malfeasance for failing to make a timely claim on

7

Norma's behalf. Further discovery is necessary in order to determine what exactly happened."

Almost 1 year later, on September 5, 2014, Stephan filed a "Notice of Evidence of Breach of Fiduciary Duty," alleging that although Martin was aware of Norma's long term care insurance policy, Martin never filed an application for nursing home benefits or for hospice benefits. In conjunction with this motion, Stephan sought an order to obtain records from two health care facilities regarding Norma's health care information. Stephan alleged that such information was necessary to determine Norma's eligibility for nursing home and hospice benefits under the long term care policy and to obtain payment of those benefits to the Trust.

In response, Martin argued that Stephan had no standing to bring breach of fiduciary duty claims or to subpoena Norma's confidential medical records because Stephan was not the real party in interest. Martin claimed that Capital City Bank, the designated executor of Norma's estate and the trustee of the Trust, was the real party in interest to assert breach of fiduciary duty claims, pursue any uncollected insurance benefits, and subpoena confidential medical records. Moreover, Martin asserted there was no evidence indicating that she breached her fiduciary duty to Norma by failing to avoid self-dealing and/or conflicts of interest.

Martin also argued that an attorney in fact only has a fiduciary obligation to exercise the powers conferred in the power of attorney in the best interests of the principal and to avoid self-dealing and conflicts of interest if that attorney in fact "decides to exercise an authority granted under [the] power of attorney." Martin explained, "The [KPAA] does not impose a duty to act on behalf of the principal"; instead, the KPAA merely gives the attorney in fact the ability to "exercise the authority conferred in the power of attorney" and K.S.A. 2016 Supp. 58-652(d) provides that an attorney in fact "'[a]cting for the principal in one or more transactions does not obligate an attorney in

8

fact to act for the principal in subsequent transactions.'" While Martin exercised some of her powers, she was not "further obligated and had no duty to act in other transactions," including the pursuit of benefits under Norma's long term care policy.

In reply, Stephan contended that she was the real party in interest because she was a beneficiary under the Trust and she had standing to present evidence of Martin's breach of fiduciary duty. Moreover, Stephan insisted that Martin signed a notarized statement accepting the delegation of powers and, under the KPAA, Martin's acceptance of these duties obligated her to exercise the powers conferred to her with the utmost good faith and loyalty to Norma. According to Stephan, Martin breached her fiduciary duty because of her failure to file for long term care benefits which wasted and depleted Norma's assets. Stephan also claimed to have evidence of a conflict of interest and self-dealing by Martin.

On February 20, 2015, the district court held a hearing to consider the outstanding motions. The district court found that Stephan had failed to present any evidence which indicated that Martin breached her fiduciary duties under the general durable power of attorney. As a result, the district court denied Stephan's request to take Martin's deposition because Stephan had already been given a sufficient opportunity to conduct discovery. The district court also granted Martin's motion for entry of a final judgment with the caveat that the case would remain open until Capital City Bank had a chance to clarify whether it needed a court order to obtain Norma's medical records for the purpose of pursuing long term care benefits for Norma's hospice stay. Finally, the district court denied Martin's motion for attorney fees because the discovery in this case benefited the Trust of which Martin is a beneficiary.

The district judge explained:

"This matter was filed for an accounting. Accounting was provided and then a supplemented accounting was provided. Thereafter, this Court allowed additional discovery on request of [Stephan] for different and sundry allegations and possibilities that might—may or may not have been present and that [Stephan] believed needed to be more rapidly flushed out.

"As it developed, the one difficulty that kept coming before this Court and that was brought before this Court regarded Bankers Life and Casualty, which [Martin], her brother, one of her brothers had gotten a healthcare account . . . long-term care and care for hospice care for all other things associated with long-term care of their mother, Ms. Brooks, in this matter.

"That they had—then [Martin] had failed her fiduciary duty somehow by not seeking the benefits from Bankers Life for that and through [Stephan] and some of this discovery, it appears that those benefits now have been paid. It appears that Bankers Life has paid that at the request, evidently, of Capital City. There [are] allegations, assumptions, inferences of why [Martin] did not pursue those benefits but no evidence clearly before this Court of anything, any reason other than as indicated by [Martin's] counsel, Mr. Hickert, her folks are dying during that period of time. There may well have been other things on her mind than applying for these benefits.

. . . .

"This Court does not find in anything that's been presented to me or any of the arguments today that there's any self-dealing or conflict of interest that I can determine. If there was a problem with the Bankers Life, it's been all taken care of with the exception of the hospice stay. . . .

"The statutes and case law require that every attorney of fact carry out their fiduciary obligations in the best interests of the principal and to avoid self-dealing and conflicts of interest. I find that in this case, I find no self-dealing or conflict of interest to this point. Should the power of attorney submitted the Bankers Life statements to get payment? Yeah, probably. Yes, that would have been very good. Was that some type of plot against her mother? I think not, and it's been cured, if it was. Bankers Life has paid those matters. They've been taken care of.

10

. . . .

"I think we've come a long ways and I've granted a lot of latitude to [Stephan] in this case and we've come to the end of this wherein there is nothing been proved more than was by the original accounting and accounting that was—substitute accounting that updated some errors that might have been made in the original accounting.

"I'm going to deny the motion to take the deposition. I think that that, in effect, is just another fishing expedition. We're on an unsubstantiated theory. I'm going to deny the motion for orders and inspection and reproduction of medical records with a caveat. I'm going to hold open that so that Capital City can make sure they apply for the hospice [benefits]. If they need the records to do that that are requested, I'll give the authority to Capital City to get those records.

. . . .

"So with that being said, once we clarify with [Capital] City what they need from me to be done in this case, then at that time, I will grant [Martin's] motion for entry of final judgment. I think everything that can be done in this action has been done. I think there's no need for any further actions. I think the statutes allow me to do certain things, but we've gone there and gone beyond that. I don't think there is anything here that's been presented to this Court that would allow me to enter any kind of judgment against this power of attorney for anything that has been alleged that she may or may not have done. I only keep the case open at this point so that we can make sure that [Capital] City gets what they need to pursue the $2,500 from hospice."

On March 31, 2015, Martin informed the district court:

"Pursuant to the Court's direction on February 24, 2015, . . . that Capital City Bank, in its capacity as trustee of the trust established by Norma Brooks, received a check for further long-term care insurance proceeds in the amount of $1,446.00 from Banker's Life and Casualty Company on or about March 24, 2015[, and] Capital City Bank ha[d] no further claims planned or pending."

On May 4, 2015, Stephan filed a motion, under K.S.A. 2016 Supp. 60-259, to alter or amend the judgment making arguments similar to those raised earlier. In response,

11

Martin stated that it was appropriate to issue a final judgment because all outstanding matters had been previously considered and resolved.

On September 9, 2015, Capital City filed a waiver of further accounting, which stated:

> "Capital City Bank, Trustee of the George and Norma Brooks Joint Revocable Trust, created by agreement dated November 8, 2011, which Trust is the sole beneficiary of the Estate of Norma Brooks, hereby waives any further accounting by Kimberly Martin in her capacity as an agent under Norma Brooks' power of attorney."

Martin moved for entry of final judgment because Capital City's waiver of further accounting "effectively end[ed] this proceeding," because the Trust was the sole beneficiary of Norma's estate and there were no creditors with any claim against her estate since no probate proceeding was filed within 6 months of Norma's death. Stephan objected to the waiver and Martin's motion.

On October 23, 2015, the district court held a hearing. At the hearing, the district court entered a final judgment dismissing the action and denied Stephan's motion to alter or amend because she had failed to present any new arguments. The district court also found that because there was no evidence of any bad faith by either party, no attorney fees would be awarded. Finally, with respect to Stephan's outstanding motion to vacate the protective order, the district court found the protective order, by statute, would remain in effect. The district court indicated, however, that "neither party [was] precluded from reporting to law enforcement personnel or from including in pleadings filed with a Court facts derived from documents produced pursuant to the Protective Order."

12

Stephan filed this timely appeal.

## ENTRY OF JUDGMENT ON PETITION FOR ACCOUNTING

Shortly after Norma's death, Stephan brought this lawsuit by filing a self-styled petition for accounting. Invoking K.S.A. 58-662, she sought a judicial order directing Martin "to prepare an accounting of all transactions under the Durable Power of Attorney, from the time the Durable Power of Attorney was executed to the date of Norma Brook's death, and including any post death transactions." Of note, Martin's responsibilities as Norma's agent only spanned 15 months. The order for an accounting was entered by the district court.

More than 2 1/2 years later, after two accounting reports, the issuance of several subpoenas for business records, a deposition, three court hearings, and a "waiver of further accounting" filed pursuant to K.S.A. 58-662, by the trustee of the Trust—the sole beneficiary of Norma's estate—the district court entered a journal entry of final judgment. In granting final judgment to Martin, the district court found, among other findings, "[Stephan] filed this action for an accounting, which accounting has been done and redone."

Although Stephan raises several issues on appeal, the principal consideration is whether the district court erred in entering a final judgment in favor of Martin and dismissing Stephan's accounting action.

At the outset, it is necessary to state our standards of review. To the extent our analysis involves interpretation of a Kansas statute, this is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). The district court's entry of final judgment, however, presents a mixed question of fact and law which requires a bifurcated standard of review. In this

13

case, the district court's factual findings are generally reviewed under a substantial competent evidence standard, and its conclusions of law based on those facts are subject to unlimited review. *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

Stephan's cause of action was permitted under K.S.A. 58-662(a) which authorizes, in circumstances where the principal is disabled or deceased, "an adult member of the principal's family or any person interested in the welfare of the principal" to file a petition for accounting by the principal's attorney in fact. The only relief sought by Stephan's cause of action was an accounting, which the district court ultimately concluded was provided during the course of this protracted litigation.

The parties have not cited anywhere in the KPAA where the term "accounting" as referenced in K.S.A. 58-662 is defined. Black's Law Dictionary, however, provides a useful generic definition:  "A rendition of an account, either voluntarily or by court order . . . . The term frequently refers to the report of all items of property, income, and expenses prepared by a personal representative, trustee, or guardian and given to heirs, beneficiaries, or the probate court." Black's Law Dictionary 23-24 (10th ed. 2014).

As detailed in the Factual and Procedural Background section, in response to the order to produce an accounting, Martin initially provided copies of banking documents from Norma and George's checking account at Silver Lake Bank. These documents provided a basis for Stephan to pursue additional discovery related to the accounting by subpoenaing business records from a nursing home facility, banking, insurance, and investment businesses. Additionally, Martin was ordered to supplement her initial accounting by producing within 21 days all of Norma's financial records in her possession during the time period she served as an attorney in fact. Martin complied with this order.

14

Stephan acknowledges that "numerous documents" were obtained through discovery. That discovery forms the basis for Stephan's assertion that Martin breached her fiduciary duties to her mother. Regardless of Stephan's assertion, however, the accounting showed that insurance benefits were available and uncollected as of the time of the lawsuit. Stephan states: "As a result of the accounting action in District Court, Martine Stephan has recovered to date $6,964.43 in unclaimed insurance benefits for the . . . Trust." This shows that Martin's accounting resulted in documentation responsive to the district court's order.

At the November 13, 2013, hearing, the district court commented to Stephan, "[Martin has] given you an accounting to say where it all was. She's done what the statute tells her to do, give you an accounting." Over 1 year later, on February 20, 2015, and after additional discovery was conducted by Stephan, the district judge reprised his original evaluation of the accounting action:

> "I think we've come a long ways and I've granted a lot of latitude to [Stephan] in this case and we've come to the end of this wherein there is nothing been proved more than was by the original accounting and accounting that was—substitute accounting that updated some errors that might have been made in the original accounting."

We are persuaded the district court did not err in concluding that Martin provided Stephan with an accounting of her actions during the brief period she served as attorney in fact for Norma. That accounting formed the basis for Stephan to fully develop information explaining the financial documents and records maintained by Martin on Norma's behalf. Importantly, the district court's entry of judgment is also supported by Capital City's September 9, 2015, waiver of further accounting filed pursuant to K.S.A. 58-662. That waiver established that the trustee of the Trust, which is the sole beneficiary of Norma's estate, was satisfied that Martin's accounting was proper and complete.

Upon our review of the record on appeal, we are satisfied the district court did not err in concluding that Martin complied with what K.S.A. 58-662(a) requires—a report of Norma's financial status and transactions during the 15 months that Martin served as attorney in fact. Accordingly, we find no error in the district court's entry of final judgment for Martin and the dismissal of Stephan's cause of action for an accounting.

Stephan focuses her appeal on her assertion that the district court erred in dismissing the accounting action without a finding that Martin breached her fiduciary duties to Norma. But as Martin points out, in an action for an accounting, the accounting itself is the relief sought; therefore, the delivery of a full and complete accounting by the attorney in fact concludes the action.

At the outset, Stephan's two page petition for accounting only sought a court order directing an accounting. It did not make any other claims, state any other causes of action, or seek any other remedies. Moreover, Stephan never sought to amend her petition to seek damages or other relief due to Martin's purported breach of fiduciary duties. It is apparent the district judge's view was that Stephan's cause of action, as pleaded, was an action for accounting and, under the circumstances, no other relief was appropriate:

> "Whichever way this goes, all I can do is dismiss the case and if you think there is fraud or misappropriation, that goes somewhere else, not in this case, because there's no remedy that I have at the end of this accounting to do anything other than to say the accounting wasn't appropriate, wasn't complete. . . .
>
> . . . .
>
> ". . . If you want to . . . find something else about it, you can file a suit with the trustee. . . .
>
> "[Martin has] given you an accounting to say where it all was. She's done what the statute tells her to do, give you an accounting . . . ."

16

We agree with the district judge's rationale. Stephan only sought an accounting, and one was provided by Martin. The district court provided Stephan with the only relief she sought by filing her petition for accounting.

Moreover, as for Stephan's allegation of breach of fiduciary duty, K.S.A. 58-662 is silent regarding the district court's authority to issue orders addressing a breach of fiduciary duty by an attorney in fact whose principal is deceased. This silence is noteworthy because in the case of a disabled principal, K.S.A. 58-662 grants district courts the power to issue numerous curative orders if the attorney in fact has breached a fiduciary duty or there is a reasonable likelihood of a breach in the immediate future. In particular, the district court may: (1) suspend or modify some or all of the authority delegated to the attorney in fact, (2) authorize a different attorney in fact to exercise some or all of the powers outlined in the durable power of attorney, and (3) designate a new attorney in fact. K.S.A. 58-662(f).

Additionally, while K.S.A. 2016 Supp. 58-657(g) permits a principal and/or the principal's "successors in interest" to seek compensatory damages, punitive damages, and reasonable attorney fees if the attorney in fact "acts in bad faith, fraudulently or otherwise dishonestly, or . . . intentionally acts after receiving actual notice that the power of attorney has been revoked or terminated, and thereby causes damage or loss," K.S.A. 58-662 contains a limitation of actions provision, which suggests our legislature's view that a petition for an accounting and a claim for breach of fiduciary duty are treated as separate causes of action. Specifically, K.S.A. 58-662(i) states:

> "Unless previously barred by adjudication, consent or limitation, any cause of
> action against an attorney in fact or successor for breach of duty to the principal shall be
> barred as to any principal who has received an account or other statement fully disclosing
> the matter unless a proceeding to assert the cause of action is commenced within two
> years after receipt of the account or statement by the principal or, if the principal is a
> disabled person, by a guardian or conservator of the disabled person's estate. If a disabled

17

person has no guardian or conservator of the disabled person's estate at the time an account or statement is presented, then the cause of action shall not be barred until one year after the removal of the principal's disability or incapacity, one year after the appointment of a conservator for the principal or one year after the death of the principal. The cause of action thus barred does not include any action to recover from an attorney in fact or successor for fraud, misrepresentation or concealment related to the settlement of any transaction involving the agency relationship of the attorney in fact with the principal."

Had the legislature intended to include the litigation of breach of fiduciary duty claims within the ambit of an accounting action as provided in K.S.A. 58-662, it would not have crafted a statute of limitations for the filing of a "cause of action" against an attorney in fact for breach of duty following the "receipt of the account or statement." K.S.A. 58-662(i). Regardless, in this case, Stephan's cause of action only sought an accounting, which the district court properly ruled was produced.

Although the district court considered and ruled adversely to Stephan's arguments regarding Martin's purported breach of fiduciary duty, the crux of the district court's ruling was that Martin had supplied an accounting as sought by Stephan and, as a result, the relief requested by Stephan was provided and the petition was dismissed. As we have discussed earlier, this ruling was not in error.

DISCOVERY RULINGS

Stephan challenges two of the district court's rulings pertaining to discovery. First, she contends the district court abused its discretion by denying her motion to take Martin's deposition. Second, Stephan complains the district court erred by entering a protective order and not subsequently vacating it. We will consider each ruling individually.

18

A brief summary of our standards of review is in order. Our Supreme Court has stated: "The trial court is vested with broad discretion in supervising the course and scope of discovery." *Miller v. Johnson*, 295 Kan. 636, Syl. ¶ 18, 289 P.3d 1098 (2012). In particular, "the district court has broad discretion in allowing depositions." *Miller v. Glacier Development Co*., 284 Kan. 476, 498, 161 P.3d 730 (2007). The party asserting the trial court abused its discretion bears the burden of showing such abuse of discretion. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015). Finally, a judicial action constitutes an abuse of discretion if the action (1) is such that no reasonable person would take the view adopted by the district court; (2) is based on an error of law; or (3) is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

Regarding the deposition, Stephan insists she was entitled to depose Martin under K.S.A. 2016 Supp. 60-226, which outlines the general provisions governing discovery in civil cases. Nevertheless, while some form of discovery may be appropriate in a cause of action for an accounting, "[d]iscovery is used to determine the facts that are relevant to the issues in controversy," and in this case, Stephan has failed to persuade us that Martin's deposition was necessary to obtain a full and complete accounting. See *LaPointe v. State*, 42 Kan. App. 2d 522, 550-51, 214 P.3d 684 (2009).

As Martin aptly points out, the district court "allowed unprecedented and broad discovery, arguably more than what is contemplated in this type of proceeding," and by the time Stephan requested permission to depose Martin, she had "already obtained the relief requested in the lawsuit, an accounting of actions taken by the agent." During the 2 1/2 years of litigation, as the district court pointed out, it "granted a lot of latitude to [Stephan]." Indeed, in addition to receiving an accounting from Martin, this latitude included the right to subpoena business records from numerous entities and the opportunity to depose a representative from Bankers Life.

19

On appeal, Stephan highlights several reasons why, in her estimation, the district court erred in denying her motion to depose Martin. For example, Stephan asserts a need to inquire about an alleged conflict of interest in the preparation of the general durable power of attorney and "Norma's reliance on [Martin] due to impairments" related to Norma's mental health. But, these are matters separate and beyond the scope of accounting which simply provides a "report of all items of property, income, and expenses prepared by a personal representative, trustee, or guardian." Black's Law Dictionary 24 (10th ed. 2014).

Stephan received considerable discovery from financial institutions and medical facilities to explain and corroborate Martin's accounting. Martin's tenure as attorney in fact for Norma was of short duration. On the record before us, after many months of discovery permitted by the district court, Stephan has proffered much speculation but few specific discrepancies or inadequacies with the accounting to reverse the district court's discretion to not further extend the litigation by ordering Martin's deposition.

We agree with the district court's determination that Stephan's deposition request qualified as a "fishing expedition" because the "accounting ha[d] been done and redone." Stephan has failed to show an abuse of discretion and, as a result, we are unable to conclude that no reasonable person would take the view adopted by the district court. *Wiles*, 302 Kan. at 74. We find no abuse of discretion.

Regarding the protective order, Stephan contends the district court abused its discretion by denying Stephan's motion to vacate the protective order. Stephan variously complains that the district court's order was issued without a sufficient evidentiary basis or good cause shown, there is a public interest in maintaining open court records, Norma's right to privacy terminated at her death, and the district court misapplied K.S.A. 58-662(e)(7).

20

As detailed in the Factual and Procedural Background section of this opinion, when the district court granted Stephan's request to issue numerous business records subpoenas the court also issued a protective order to prevent any person other than the parties' attorneys from reviewing the documents. Based on Martin's arguments, the district court decided the protective order was appropriate to maintain the confidentiality of Norma's health care records and financial documents. The district court indicated, however, that if one of the attorneys discovered misconduct based on a review of the records, the court would conduct an in camera review prior to releasing those documents from the protective order.

Later in the litigation, Stephan filed a motion to vacate the protective order, but Martin opposed the motion, claiming it was moot because Stephan never sought an in camera review to release the records from the protective order. At the end of the litigation, although the district court reaffirmed the protective order would remain in effect, the court ordered that "neither party [was] precluded from reporting to law enforcement personnel or from including in pleadings filed with a Court facts derived from documents produced pursuant to the Protective Order."

K.S.A. 2016 Supp. 60-226(c) authorizes a district court to "exercise its general supervisory powers over discovery . . . by making 'any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 622, 244 P.3d 642 (2010).

We are unable to conclude that no reasonable person would have entered this particular protective order. The district court carefully crafted the protective order to allow Stephan's counsel (who was also Stephan's husband) full access to all of the documentation, including the ability to disclose any wrongdoing revealed in the documents in court pleadings or to law enforcement authorities. Based upon Stephan's

21

husband's arguments during court hearings, it is clear that he had an intimate understanding of the case, including prior family dynamics, which was equivalent to that of Stephan's understanding. The bottom line: While Stephan was fully informed regarding the discovery, Martin's concern in maintaining the confidentiality of Norma's health care and financial records was also addressed.

Apart from the propriety of the protective order, we have carefully reviewed Stephan's briefing and are unable to find any substantive argument that Stephan's cause of action was prejudiced by the issuance of the protective order. On the contrary, there is some indication that Stephan was not prejudiced because she never sought an in camera hearing requesting to set aside the protective order with regard to any documents. Under these circumstances, without any claim or showing of prejudice to Stephan, any decision we could issue as to the propriety of the district court's ruling would be hypothetical in nature and have no effect on the proceedings. We conclude this issue is moot. See *Stano v. Pryor*, 52 Kan. App. 2d 679, 682-83, 372 P.3d 427 (2016) (quoting *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 [2012]).

ATTORNEY FEES

For her final issue on appeal, Stephan asserts the district court abused its discretion by denying her request for attorney fees. Citing K.S.A. 2016 Supp. 58-657(g), Stephan claims that because Martin acted "in bad faith," Stephan should be awarded attorney fees.

K.S.A. 2016 Supp. 58-657(g) permits the award of reasonable attorney fees in cases wherein the attorney in fact "acts in bad faith, fraudulently or otherwise dishonestly." In its journal entry for final judgment, the district court—consistent with its prior ruling that there was no breach of fiduciary duties by Martin—found "no bad faith by either party so no attorney fees are awarded to either party."

22

At the outset, as discussed in the first issue, K.S.A. 2016 Supp. 58-657(g) relates to causes of action for breach of fiduciary duties and does not specifically mention an award of attorney fees for causes of action for an accounting undertaken pursuant to K.S.A. 58-662(a). Assuming K.S.A. 2016 Supp. 58-657(g) does apply to accounting cases, however, Stephan has failed to show how the district court erred in its evaluation that Martin's delay in obtaining $6,964.43 in insurance reimbursement for Norma's nursing home or hospice care costs was evidence of bad faith.

Stephan has not favored us with a definition of bad faith in this context. Our research reveals a trust case wherein our court looked to Black's Law Dictionary 159 (9th ed. 2009), to define bad faith as "'[d]ishonesty of belief or purpose.'" *Schartz v. Barker*, No. 104,812, 2013 WL 189686, at *11 (Kan. App. 2013) (unpublished opinion). We find nothing in the record to support any claim of dishonesty in Martin's belief or purpose in serving as an attorney in fact for her mother.

Affirmed.