NOT DESIGNATED FOR PUBLICATION

No. 118,579

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of
G.A-S., G.A-S., and D.A-S.,
Minor Children.

MEMORANDUM OPINION

Appeal from Ford District Court; E. LEIGH HOOD, judge. Opinion filed May 11, 2018. Affirmed.

*Natalie K. Randall*, of Dodge City, for appellant natural mother.

*Kathleen Neef*, deputy county attorney, and *Kevin Salzman*, county attorney, for appellee.

Before GARDNER, P.J., GREEN and SCHROEDER, JJ.

PER CURIAM: Mother appeals from the termination of her parental rights to her three children, contending insufficient evidence supports the court's finding of unfitness. She also claims the court abused its discretion by terminating her parental rights without finding that termination served her children's best interests. These arguments are not persuasive. The State presented more than enough evidence to support the court's finding that Mother was unfit to parent—Mother had a history of drug and alcohol abuse, a lengthy criminal history, and was in and out of jail several times during termination proceedings. The court did not abuse its discretion in terminating her rights. Thus, we affirm.

*Factual and procedural background*

In March 2015, Ford County Sheriff deputies went to Mother's home in Dodge City to execute an arrest warrant against Mother. Mother lived in the Dodge City home with her three daughters: D.A-S., born in 2003; G.A-S., born in 2005; and G.A-S., born in 2007. While the officers were at Mother's house, they found several bags of marijuana and methamphetamine, most of which were in Mother's bedroom. They also found an assortment of drug paraphernalia, two handguns, and ammunition. One officer described a "distinct odor of marijuana" throughout the house, and Mother admitted to having smoked marijuana in the house that day. The officers arrested Mother, took the daughters in as children in need of care (CINC), and Juvenile Intake placed them with a family member.

The State filed CINC petitions for all three children in June 2015, alleging that immediate placement was in the children's best interests. The district court agreed and placed the girls in temporary protective custody.

The first case plan conference took place in July 2015, when the Department for Children and Families (DCF) worked with Mother to create a permanency plan to reunite her with her daughters. The permanency plan established several objectives for Mother to work toward, including:

- Comply with her probation requirements, resolve outstanding legal issues, and not incur any new charges;
- Submit to random drugs tests as requested, and have negative results for all substances;
- Maintain a steady job and housing; and
- Stay away from illegal drugs or activities.

2

The plan also called for Mother to have supervised visits with her daughters once a week, and for Mother to meet with her caseworker once a month.

St. Francis Community Services, the agency assigned to this case, submitted its first status report to the court in August 2015. The report said Mother was making progress on her case plan and had complied with the case plan requirements. The court ordered Mother to keep working on her case plan.

After her initial August hearing, Mother's contact with her daughters declined. She was ordered to serve time in jail for having violated her probation, and she failed to complete the required urinalyses. Also, Mother moved to Wichita for a few months in October 2015 and had no contact with her caseworkers while she was there. Mother moved back to Dodge City in November 2015 after a domestic abuse incident with her boyfriend and then started working part-time providing home health care.

At the December 2015 case conference, Mother's caseworkers said Mother had admitted to having used methamphetamine and marijuana while she was living in Wichita. Their status report to the court noted that Mother had spent three weekends in jail for a probation violation, had served a jail sanction at the beginning of September 2016, and had had her driver's license revoked after driving with a suspended license. Despite these setbacks, Mother's caseworkers thought Mother was making progress on her case plan: she had found part-time employment, was looking for a full-time job, and was involved in two drug treatment programs.

Because Mother had continued to make progress on her case plan, her daughters moved back into the home in July 2016. But the family's home life soon started to deteriorate. By the middle of August 2016 the girls reported verbal abuse by Mother. They also told DCF workers that Mother spent most of her time upstairs in her bedroom, leaving the girls to fend for themselves, and often had people over and used drugs with

3

them. When DCF investigated those allegations, they found four men upstairs in Mother's room—one of them was Mother's new boyfriend whom DCF knew had a "respectable criminal history." The workers did not see any drugs or drug paraphernalia, but noted that Mother had been generally uncooperative during the investigation.

In August 2016, Mother was ordered to spend three weekends in jail for having violated her probation. Mother's caseworkers approved a childcare plan for the time Mother would be in jail, but Mother stuck to the plan for only one weekend. Their report also said that the daughters told a social worker how Mother had men in and out of their house, in violation of an earlier safety plan. It also said the daughters described the drug paraphernalia that Mother and her boyfriend used drugs with. One of the caseworkers went to check on Mother and the girls in response to the daughters' allegations, but nobody was watching the children.

A couple of weeks later, the two younger daughters reported that Mother was using drugs again. The youngest told the social worker that Mother stayed upstairs but would not let the girls go up to her room. Shortly thereafter, Mother went back to jail for yet another probation violation. When the caseworkers went to check on the girls, they found unapproved men in the home watching the daughters.

The daughters were again removed from Mother's home in September 2016 after Mother had returned to jail for violating her probation by using methamphetamine. At that point, the family's caseworkers determined that reintegration was no longer a viable option, and the court ordered proceedings to terminate Mother's parental rights.

The October 2016 caseworker status report detailed the reasons for that conclusion, including:

4

- Mother had not provided a safe environment for her daughters and had not avoided illegal drugs or activity;

- When the daughters returned to Mother's home in July 2016, Mother did not have a plan for transporting them to and from school, and did not have a plan for school supplies or clothes. D.A-S. had to rely on her former foster mother to provide the clothes;

- Mother did not stop having unapproved men in the home; and

- Mother did not feel like she had done anything wrong by using methamphetamine.

The report also affirmed allegations of physical neglect by Mother.

The hearing to terminate Mother's parental rights took place on May 18, 2017. Mother appeared with her attorney. Mother admitted to the court that she had missed meetings with her attorney to prepare for the hearing because she had absconded from probation and had not turned herself in until the day before the hearing. She also admitted that she had used methamphetamine only a few days before the hearing. After hearing the evidence, the court found that Mother was unfit to parent her children, that her situation was not likely to change in the foreseeable future, and that termination of Mother's parental rights was in her children's best interests. Mother appeals, challenging these findings.

*Does sufficient evidence support the court's decision to terminate Mother's parental rights?*

Mother first contends that the State did not present sufficient evidence to support the district court's finding that she was unfit to parent her daughters.

5

Because a parent has a fundamental liberty interest in the relationship with his or her child, the State must prove the allegations of conduct that form the basis for termination by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769-70, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). When we review a district court's decision to terminate parental rights, we consider the evidence viewed in the light most favorable to the State, and determine whether we are convinced that a rational fact-finder could have found it highly probable, i.e., by clear and convincing evidence, that the parent's right should be terminated. *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, we do not weigh conflicting evidence, evaluate the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705.

The district court may terminate a parent's rights when the State has shown (1) that the parent is unfit and will likely remain so for the foreseeable future, and (2) that it is in the best interests of the child to terminate the parent's rights. See K.S.A. 2017 Supp. 38-2269(a), (g)(1). The district court may base its finding of unfitness on one of several bases outlined by the Legislature. See K.S.A. 2017 Supp. 38-2269(b)-(c). Although courts should consider all applicable factors for termination, a single statutory basis for unfitness can support terminating a parent's rights if that basis is supported by clear and convincing evidence. K.S.A. 2017 Supp. 38-2269(f); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

The district court here relied on seven of the statutory factors, including: (1) that Mother's use of drugs or alcohol rendered her unable to care for the physical, mental, or emotional needs of her daughters, K.S.A. 2017 Supp. 38-2269(b)(3); and (2) that Mother failed to carry out a reasonable, court-approved plan directed toward reintegrating the children into her home, K.S.A. 2017 Supp. 38-2269(c)(3). Our review of the record shows that the State met its burden on both of these findings. We thus find it unnecessary to address all seven of the factors addressed by the district court.

6

First, clear and convincing evidence supports the district court's finding that Mother was unfit to parent because of her drug use. See K.S.A. 2017 Supp. 38-2269(b)(3). The State opened the CINC cases leading to this appeal after officers found large quantities of drugs and drug paraphernalia in Mother's home in 2015, and the record shows that Mother's drug use dates back over 20 years. Mother's criminal record includes seven misdemeanor and felony drug convictions dating back to 1997, and she was on probation for one of those convictions when the girls were removed from her home.

Mother provided several clean urinalysis samples between 2015 and 2017, but she did not submit to drug tests consistently, as was required. Mother did not submit any samples between October 2015 and January 2016, provided four samples between February and March 2016, and submitted only two samples between September 2016 and February 2017. Mother continued to use drugs despite having completed her drug treatment program. She was arrested for violating her probation after testing positive for methamphetamine in September 2016, and she tested positive for methamphetamine in November 2016 and March 2017. At her termination hearing, Mother admitted to having used methamphetamine a few days earlier. Mother apparently believes her drug use is acceptable and has no intention of changing it.

Secondly, clear and convincing evidence supports the court's finding that Mother failed to carry out a reasonable, court-approved plan to reintegrate the children into her home. See K.S.A. 2017 Supp. 38-2269(c)(3). Between 2015 and her termination hearing, Mother went back and forth to jail at least eight times for probation violations. Mother mostly lived in the same place during this case, but she did not maintain steady employment or make regular contact with her caseworkers.

When her daughters moved back in with Mother in July 2016, Mother did not maintain a plan to transport them to and from school, and did not provide school supplies or clothes for her daughters. Mother continued having sex offenders and felons visit her

7

home, in violation of the requirement that the State had to approve visitors in the home. Mother stopped participating in her case plan after her daughters were removed from the home the second time. By the time the termination hearing took place, Mother had not seen her daughters for approximately six months.

Sufficient evidence supports the district court's finding that Mother was unfit and that her unfitness was unlikely to change in the foreseeable future.

Finally, we address Mother's contention that the district court abused its discretion by finding that termination of her parental rights was in the best interests of her children. When considering termination of a parent's rights, in addition to finding a parent unfit, the court must consider whether termination is in the best interests of the child. K.S.A. 2017 Supp. 38-2269(g)(1). We review a district court's decision regarding the best interests of a child for an abuse of discretion. *In re R.S.*, 50 Kan. App. 2d 1105, 1116, 336 P.3d 903 (2014). A court abuses its discretion if:  (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

The district court's order terminating Mother's parental rights states that it gave primary consideration to the physical, mental, or emotional needs of each child and found it was in the best interests of the children to terminate Mother's parental rights. Mother does not deny her failures, but simply requests additional time to comply and show that she has her life under control.

The district court judge considered that Mother had known of the requirements for reintegration for nearly two years, yet did not follow through with the plan. It noted that the children had been in placement for a year because of Mother's drug use, and that after they had been returned to Mother for only two months, they had to be removed again due

8

to Mother's drug use. The district court discussed Mother's lengthy history of drug and alcohol abuse, and that her current probation for a drug conviction would likely be revoked—thus sending Mother to prison—because of her numerous violations. The district court also stressed how Mother's younger daughters were almost teenagers, the oldest was 14, and all three of them deserved a normal life.

A reasonable person could easily take the view adopted by the district court—that termination of Mother's parental rights was in the best interests of the children. Thus, we find no abuse of discretion.

Affirmed.