NOT DESIGNATED FOR PUBLICATION

Nos. 119,009
119,010
119,011

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of V.S., A.S., and E.J.,
Minor Children.

MEMORANDUM OPINION

Appeal from Miami District Court; AMY L. HARTH, judge. Opinion filed August 10, 2018.
Affirmed.

*Andrew L. Bolton*, The Bolton Law Firm, LLC, of Louisburg, for appellant natural mother.

*Rebecca S. Craig*, assistant county attorney, *Elizabeth Sweeney-Reeder*, county attorney, and
*Steven M. Ellis*, guardian ad litem, for appellee.

Before GARDNER, P.J., GREEN and SCHROEDER, JJ.

PER CURIAM: Mother appeals the termination of her parental rights to her three
children, V.S., A.S., and E.J. The district court found that Mother was unfit, that her
conduct was unlikely to change in the foreseeable future, and that termination was in the
best interests of the children. Finding no error, we affirm.

*Factual and Procedural Background*

In October 2015, the State filed petitions alleging that V.S., A.S., and E.J., were
children in need of care (CINC). The petitions alleged that reasonable efforts had been
provided to prevent the removal of the children from their home, that an emergency

1

required out-of-home placement, and that the children were likely to sustain harm if not immediately removed from the home and/or placement out of the home was in the best interests of the children.

Appropriate agencies contacted Mother many times, but her drug abuse and failure to provide for her children continued, placing the children at risk. The district court adjudicated the children as CINC and ordered them into the custody of the State Department for Children and Families (DCF). The family had a history of DCF reports dating to 2002. V.S. and A.S. had been the subject of CINC petitions in 2004, but that action was dismissed in 2005, and they were reintegrated with Mother.

In August 2017, the State and the Guardian ad Litem (GAL) filed a Motion for Finding of Unfitness and Termination of Parental Rights for both Mother and B.S. (the natural father of V.S. and A.S.) as well as for the unknown father of E.J. The district court granted one continuance, then set the termination hearing for November 2017. At the beginning of that hearing, Mother and B.S. moved for another continuance, as Mother had been released from jail only one month earlier. The State objected, noting that the case had been pending for two years, that the motion was filed at the end of August, and that the hearing had already been continued once. The GAL joined in the State's objection, adding that the children deserved permanency and that Mother's inability to participate earlier was from her own doing. The Court denied the motion to continue.

At the termination hearing, the State called three employees of Kaw Valley Center Behavioral Healthcare, Inc. (KVC) as witnesses. Mother also testified. We summarize that testimony below.

Throughout the case, Mother was assigned several case plan tasks, and all three employees of KVC testified about Mother's compliance with those tasks. A few of her tasks had to do with transportation—both obtaining appropriate transportation and using

2

it to attend all appointments, meetings, and court hearings. Mother did not have her own transportation and often relied on family to give her rides. Her lack of stable transportation affected her attendance at important case events. Mother would sometimes have to reschedule meetings, and she did not attend all of her court proceedings, case meetings, and urinalysis tests (UA).

Mother was unable to provide KVC workers with documentation of appropriate, legal income, nor did she provide KVC workers with proof that she was applying for jobs as directed. Jamie Payne, the case worker for all three children from July 2016 to June 2017, testified that Mother provided copies of applications during their January 2017 meetings, around the time Mother got out of treatment, but that was the only time she did so. Paige Webb, who served as the case manager for all three children from October 2015 to December 2015 and then served as the case supervisor from February 2016 to July 2017, testified that Mother submitted employment applications to KVC, but there was no evidence that Mother submitted them to any potential employers.

Other tasks had to do with maintaining a stable and clean home, free of clutter and safety concerns. Mother did not have the utilities on in her home, it was cluttered, not free of safety concerns, and there was not enough food in the home.

Mother did not consistently update KVC with changes in her contact information. She complied with this task at times, as she reported several different phone numbers to KVC employees. But at times KVC employees could not reach Mother because she did not give them an accurate or updated phone number or because she did not update her address. This hindered KVC's ability to complete the required walk-throughs of her home to ensure safety and adequate housing.

Other case plan tasks focused on Mother's drug and alcohol abuse. Mother did not complete outpatient drug and alcohol treatment. Payne believed that Mother went to

3

inpatient treatment between December 2016 and January 2017, and possibly completed it, but Mother never signed a release so Payne could receive that information. But to the KVC employees' knowledge, Mother never completed outpatient drug and alcohol treatment as assigned. Webb testified that although Mother completed a drug and alcohol assessment, Mother did not follow the recommendations. Nor did Mother comply with her random drug screens, KVC's color code drug screens, or fingernail drug screening. Mother provided random drug screens "sporadically" and had a combination of negative and positive results, as well as missed drug screens. She did not submit to fingernail drug testing, as she was incarcerated shortly after Payne arranged both for the testing and for KVC to pay for it.

Payne received no documentation that Mother was complying with the recommendations from her mental health intake. Webb also testified that Mother did not comply with this task—Mother had completed a mental health intake but did not follow any of the recommendations and went to individual therapy sessions only a couple of times before stopping. Chauncey Hester, the case manager for the children since June 2017, testified to that effect as well.

In response, Mother testified that she successfully completed her inpatient treatment in January 2017 and that her discharge recommendation was to see a counselor. Mother testified that she saw a counselor at Elizabeth Layton Center from her release from Mirror in January 2017 until June 2017, at which point she began receiving notices stating that if she could not pay for counseling, she was not going to be allowed to have any more sessions. Because Mother had no income and was unable to pay for the sessions herself, she quit attending counseling sessions. Mother testified that she informed KVC about the payment notices from Elizabeth Layton Center. Mother said that she spoke with Payne, who informed Mother about financial assistance for counseling. But Mother admitted that she "never, honestly, followed through."

Finally, several tasks required Mother to provide KVC documentation to ensure progress on her assigned tasks. Mother signed releases for KVC, but did not provide documentation of her compliance with other case plan tasks even though she knew that she needed to work on those tasks to see her children. Mother also failed to provide documentation that she had followed the terms of her probation, as required. Payne testified that because Mother was incarcerated for some time during this case, it is unlikely that she was following the terms of her probation.

When concluding her testimony, Payne opined it would be in the best interests of the children to be adopted and for the court to terminate Mother's parental rights. Payne testified that although E.J. had indicated that she wanted to remain in contact with Mother, it would be in E.J.'s best interests to sever ties with Mother. Payne stated that, as the youngest child, E.J. particularly deserved stability and that although Mother had been given time to show consistency and improvement, she had not done so.

Hester also testified that he believed it is in the best interests of A.S. and E.J. that they be adopted. Hester stated that the case had been going on for much longer than during his short involvement in the case, and that A.S. and E.J. had expressed that they were "just done with the whole process of this case and just waiting around and the uncertainty." When the hearing was continued in October 2017, A.S. and E.J. were disappointed and let down, as they were hoping for closure.

Mother testified that she did not have contact with any of her three children from the Fall of 2016 to January 2017 because of UA issues, as Mother had to pass two consecutive UAs before visiting. Before that, Mother had three visits with her children—once in July, once in August, and once in September. Mother was supposed to have weekly visits with her children during that time span. When asked why that did not happen, she stated, "I think it was just—like just couldn't make the time, like not me. The

5

kids had social activities going on. I mean, between the two of us, we just couldn't get anything together." Mother had four visits in January and February 2017.

Mother testified that she understood her children wanted to be done with this case. She admitted, "I have not been very consistent as a parent these last two years. And being, you know, flipped around from caseworker to caseworker has probably been hard on them as well but not as hard as what I've done, and I realized that. But I was a mom for 20 years. I was a good—I held—maintained employment for 20 years. I raised my kids. They're all very good, respectful. They're very good kids. It doesn't take somebody [who is], you know, not a good parent to raise kids like that."

When the GAL asked Mother why she did not follow through when KVC offered her financial help to continue therapy sessions, she responded, "To be real honest, because I was addicted to drugs at the time." When asked by the GAL about her current treatment, Mother stated that she had been to jail three times, had gone through inpatient therapy, and has a supportive church family. Mother responded that she had no car, driver's license, car insurance, or health insurance. She had been staying with a friend who was helping pay bills since she did not have income of her own. The GAL then asked Mother if she was participating in Narcotics Anonymous—Mother responded that she was not, but that she would like to find out where the meetings are held and how to get there.

Upon the State's request, the court took judicial notice of Mother's two criminal cases:  15-CR-202, Mother's distribution of methamphetamine case, in which she remains on probation; and 17-CR-95, Mother's current Offender Registration Act case. Sentencing in the latter case had not yet occurred at the time of Mother's termination hearing. The court noted that Mother had two felony convictions during the case and had been incarcerated for 6 of the 25 months before the termination hearing. The court also

6

noted that in the month since Mother's release from prison, she had done almost nothing to make progress on her case plan tasks.

The court found that Mother was an unfit parent, based on several reasons. Those were: (1) Mother's failure to rehabilitate the family despite reasonable efforts made by appropriate agencies; (2) Mother's lack of effort to adjust her conduct to meet the needs of the children; (3) Mother's failure to maintain regular visitation with the children; and (4) Mother's failure to carry out a reasonable plan directed toward the integration of the children into her home. The court also found that Mother's conduct was unlikely to change in the foreseeable future and that it was in the best interests of all three children that Mother's parental rights be terminated.

Mother appeals, raising two issues: (1) the district court's decision was not supported by clear and convincing evidence, and (2) the district court abused its discretion by finding Mother unfit and terminating her parental rights.

*Governing Legal Principles*

We first set out the legal principles that govern our determination on appeal. A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. As a result, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2017 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2017 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making the parent "unable to care properly

7

for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2017 Supp. 38-2269(b). And the statute lists four other factors to consider if a parent no longer has physical custody of a child. K.S.A. 2017 Supp. 38-2269(c).

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational fact-finder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, we must resolve any conflicts in evidence to the State's benefit and against the parent.

Having found unfitness and unlikelihood of any timely change, the district court must then decide whether termination of parental rights is "in the best interests of the child." K.S.A. 2017 Supp. 38-2269(g). As directed by the language of K.S.A. 2017 Supp. 28-2269(g), the district court must accord "primary consideration to the physical, mental and emotional health of the child." The district court should weigh the benefits to the child in terminating the relationship with the parent, given the characteristics and duration of the unfitness, against the emotional trauma to the child that may result from that termination and the removal of the parent from his or her life. See *In re K.R.*, 43 Kan. App. 2d 891, 904, 233 P.3d 746 (2010).

The district court makes that determination based on a preponderance of the evidence. *In re R.S.*, 50 Kan. App. 2d at 1116. The best interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion. A

8

district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106; *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

*Clear and convincing evidence shows Mother is unfit.*

The district court based its termination of Mother's parental rights on these four factors: K.S.A. 2017 Supp. 38-2269(b)(7), failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family; K.S.A. 2017 Supp. 38-2269(b)(8), lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child; K.S.A. 2017 Supp. 38-2269(c)(2), failure to maintain regular visitation, contact, or communication with the child or with the custodian of the child; and K.S.A. 2017 Supp. 38-2269(c)(3), failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home. We address these four factors below.

First, we agree that reasonable efforts from appropriate agencies failed to rehabilitate the family. K.S.A. 2017 Supp. 38-2269(b)(7). Despite assistance from KVC employees, Mother was unable to change her behavior. KVC offered financial assistance to help with many of her case tasks, such as setting up the fingernail drug screening and offering financial assistance for continuing outpatient therapy, but Mother admitted that she was not motivated to follow through with them. Mother missed case plan meetings with KVC employees, and although they informed her that she needed to make progress on her tasks to prevent the court from terminating her parental rights, she did not do so.

Second, Mother showed little, if any, effort to adjust her circumstances. K.S.A. 2017 Supp. 38-2269(b)(8). Mother showed little effort into working on her physical and

9

mental health, as she sporadically attended therapy, did not complete outpatient treatment, and chose not to get involved with Narcotics Anonymous or another type of support group outside her church. Mother was incarcerated during periods of this case. She committed two felonies and several probation violations. Although Mother had ample time, she secured no stable residence or transportation without relying on family. When Mother was not staying with friends, her own home was not appropriate, clean, free of safety concerns, or adequately stocked with food, and she did not have the utilities on. Because of her lack of effort, Mother's habits and circumstances did not change during the case and she was still unable to provide for her children's needs.

Third, Mother did not maintain regular visits with her children. K.S.A. 2017 Supp. 38-2269(c)(2). During part of the time V.S., A.S., and E.J. were in DCF custody, Mother was incarcerated. When she was not incarcerated, Mother went in and out of the children's lives. Her visits occurred inconsistently and in spurts. When asked why her visits were not occurring weekly as they were supposed to, she did not take responsibility. Instead, she blamed the children's schedules. Mother's lack of progress on her case tasks, inability to provide consistently negative UAs, and her choices that led to probation violations and felony convictions caused her to not be able to maintain regular visits.

Fourth, Mother failed to carry out a reasonable plan approved by the court. K.S.A. 2017 Supp. 38-2269(c)(3). Although so many of her tasks were fully within her control, Mother made little to no progress on most of the tasks assigned to her. When asked about her lack of progress, she did not express concern or indicate that she was changing her ways. She described a lack of motivation and a failure to follow through. She failed to maintain appropriate housing and transportation, failed to update her contact information, and failed to provide KVC with required documentation. She violated the terms of her probation and had no source of income. She did not fully comply with KVC's random

10

drug screens and color-coded drug screens. Mother failed to comply with almost every task of her case plan.

Further, Mother's conduct is unlikely to change in the foreseeable future. See K.S.A. 2017 Supp. 38-2269(a). We view the foreseeable future from the child's perspective, not the parents', as time perception of a child differs from that of an adult. *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008). We also consider Mother's past conduct as an indicator of her future behavior. See *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982).

> "A parent may be labeled 'unfit' under the law even though he or she loves the child and wants to do the right thing, which may be the case here. But we must judge these cases based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008).

Nothing in the record suggests that Mother's conduct is likely to change. During her cases, she provided mixed results of UAs, committed new felonies, and was incarcerated for approximately 6 of the 25 months her children were in the State's custody. She did not attend outpatient drug and alcohol counseling, despite assistance from KVC to do so.

Mother claims that in the month between her release from incarceration and the termination hearing, she showed some progress. But the district court had granted a continuance so that Mother could show some progress and had granted an O/R bond in her criminal case for the same purpose. Despite those opportunities, Mother's claims of progress centered on her desires instead of her actions. She *wanted* to attend Narcotics Anonymous meetings, she *wanted* transportation, and she claimed she had support from her church for other goals. But over the course of the case, Mother failed to show that her desires resulted in any changed behaviors. In the month between her release from

11

incarceration and the termination hearing, Mother gave the case workers her telephone number but not her address, and took few, if any other, steps to change her circumstances.

Mother's testimony contradicted the testimony of the State's witnesses in some respects, and Mother asks us to rely on her version of events. But the district court implicitly credited the testimony of the State's witnesses, and we cannot make our own credibility calls or discount the district court's judgment on that matter.

As a result, we find clear and convincing evidence that Mother is unfit and that Mother's circumstances are unlikely to change in the foreseeable future.

*Termination of Mother's parental rights is in the best interests of the children.*

Finally, a district court must determine whether termination of parental rights is in the best interests of the children. K.S.A. 2017 Supp. 38-2269(g)(1). The district court is in the best position to make findings on the best interests of the child, and we will not disturb its judgment unless we find the determination amounts to an abuse of judicial discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255 (2010). When considering whether termination of parental rights is in the best interests of the child, the court will consider the physical, mental, and emotional health of the child. K.S.A. 2017 Supp. 38-2269(g)(1). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

The children's best interests would be served by termination of Mother's parental rights. Mother cannot adequately provide for the children's physical, mental, and emotional needs. KVC employees testified and the GAL argued that the instability and

12

lack of permanency has taken a toll on the children. Even though this case has been ongoing since the fall of 2015, Mother has failed to make the necessary changes to her life. The children are old enough to realize that Mother has had setbacks in her life and have told KVC employees they are tired of being in this situation. A.S. and E.J. specifically felt disappointed when the case was continued because they desire permanency, even to the point of bringing Hester the name of a couple they wanted to adopt them.

Mother has failed to establish that the district court abused its discretion in finding that it is in her children's best interests to terminate Mother's parental rights. Its determination that termination of Mother's parental rights was in the best interests of the children was not based on an error of law or an error of fact, and we cannot say that no reasonable person would take the view adopted by the court. Based on the entire record on appeal, we find clear and convincing evidence showing that Mother is unfit, that her circumstances are unlikely to change in the foreseeable future, and that termination of her parental rights is in the best interests of these children.

*The district court did not abuse its discretion in finding Mother unfit and terminating her parental rights.*

Mother additionally contends that the district court abused its discretion by finding her unfit and terminating her parental rights. Here, Mother focuses on the progress she says she made in the month between her release from incarceration and the termination hearing. But Mother's testimony as to her progress during that month was contradicted by the State's witnesses, and the district court chose to believe them. And the district court properly measured Mother's conduct not only by events during that one month, but also by Mother's conduct during the 25 months while her children were in the State's custody, waiting for her to show sufficient change. We thus find no abuse of discretion in the district court's decision to terminate Mother's parental rights.

13

Affirmed.